[No. 8,510.—In Bank.]
December 28, 1882.

## THE SAN FRANCISCO GAS COMPANY *v.* HENRY BRICKWEDEL.

| 62 | 641 |
|----|-----|
| 99 | 413 |
| 62 | 641 |
| 107 | 184 |
| a107 | 648 |
| 62 | 641 |
| 111 | 322 |
| 112 | 164 |
| 112 | 547 |
| 62 | 641 |
| 113 | 162 |
| 113 | 202 |
| 62 | 641 |
| 118 | 527 |
| 118 | 535 |
| 62 | 641 |
| 119 | 227 |
| 62 | 641 |
| 131 | 298 |

MANDAMUS—DEBT OF MUNICIPALITY — CONSTITUTIONAL LAW. — *Mandamus* to the defendant, as Auditor of San Francisco, to compel him to audit certain bills for gas furnished the city. The defense set up in the answer was: 1. That the revenue for the year in which the indebtedness was incurred had been exhausted at the time of the presentation of the bills; and, 2. That the plaintiff was indebted to the city and county in a larger amount for taxes.

*Held:* Under Section 18 of Article xi. of the Constitution, no indebtedness or liability can be incurred by a municipality (except in the manner therein stated) exceeding in any year the income and revenue actually received by it. In other words, each year's income and revenue must pay each year's indebtedness and liability, and no indebtedness or liability incurred in any one year shall be paid out of the income or revenue of any future year.

ID.—ID.—TAXES—DEBT—DEFINITION.—THORNTON, J., concurring in the leading opinion, was also of the opinion that a tax is a debt within the meaning of Section 82 of the Consolidation Act; and that under that section the plaintiff, if the allegations of the answer were true, was not entitled to the writ.

ID.—ID.—ID.—McKINSTRY, J., was of the opinion that the writ ought not to issue, and therefore dissented from the order of reference.

APPLICATION for writ of *mandamus* to Henry Brickwedel, Auditor of the City and County of San Francisco, to compel him to audit certain demands for gas furnished to said city and county.

*Clement, Osment, & Clement,* for Plaintiff.

*John F. Swift* and *J. F. Cowdery,* for Defendant.

Ross, J.:

We think it clear that when the framers of the present Constitution said, as they did by Section 18 of Article xi. of that instrument, that "no county, city, town, township, board of education, or school district shall incur any indebtedness or liability, in any manner or for any purpose, exceeding in any year the income and revenue provided for it for such year, without the assent of two thirds of the qualified electors thereof, voting at an election to be held for that purpose," etc., they meant that no such indebtedness or liability should be incurred (except in the manner stated) exceeding in any year the income and revenue actually received by such county, city, town, township, board of education, or school district. In other words, that each year's income and revenue must pay each year's indebtedness and liability, and that no indebtedness or liability incurred in any one year shall be paid out of the income or revenue of any future year. The system previously prevailing in some of the municipalities of the State, by which liabilities and indebtedness were incurred by them far in excess of their income and revenue for the year in which the same were contracted, thus creating a floating indebtedness which had to be paid out of the income and revenue of future years, and which, in turn, necessitated the carrying forward of other indebtedness, was a fruitful source of municipal extravagance. The evil consequences of that system had been felt by the people at home and witnessed elsewhere. It was to put a stop to all of that, that the constitutional provision in question was adopted. The change was eminently wise. A somewhat similar provision in the old Constitution with respect to State indebtedness saved the people of the State a vast amount of money. (*People* v. *Johnson*, 6 Cal. 503; *Nougues* v. *Douglass*, 7 id. 65.)

We have neither the right nor the disposition, by judicial interpretation, to take away the wholesome restriction upon municipalities thus imposed by the Constitution. Of course, in giving effect to this radical change from the pre-existing condition of things, it will not be strange if some shall be found to suffer. But it must be remembered that all are presumed to know the law, and that whoever deals with a munici-

pality is bound to know the extent of its powers. Those who contract with it, or furnish it supplies, do so with reference to the law, and must see that limit is not exceeded. With proper care on their part and on the part of the representatives of the municipality, there is no danger of loss.

From the petition and the answer before us we are unable to ascertain the facts essential to the proper determination of the petitioner's application. The answer sets up affirmatively certain matters of fact, which are by the law deemed denied by the petitioner. For the purpose of ascertaining the ultimate facts in respect to the income and revenue of the city and county for the fiscal year 1881-2, and in respect to the disposition and disbursement of that income and revenue, and in respect to petitioner's demands, we must refer the cause for proof and findings.

Ordered that the cause be and is hereby referred to Honorable J. F. Finn, Judge of the Superior Court of the City and County of San Francisco, who will, on proper notice to the respective parties, take proof and report findings of fact to this Court in accordance with the views above expressed.

MYRICK and McKEE, JJ., concurred.

THORNTON, J., concurring:

I concur in the view taken by Justice Ross of the twelfth section of Article xi. of the Constitution, and desire to say what follows in addition.

The demands preferred by the petitioner in this case, for which the writ of mandate is asked, amount to the sum of $178,648.98.

It is set forth in the answer to the petition that there is due by the petitioner, the San Francisco Gas Light Company, to the Treasury of the City and County of San Francisco, the sum of $195,465.38, for taxes, for fiscal years 1880-1 and 1881-2, no part of which has been paid—an amount, it will be seen, largely in excess of the demands of the petitioner.

It is contended on behalf of respondent that petitioner is indebted for these taxes as above stated, and as the amount of indebtedness exceeds the amount of the demands of petitioner, the Auditor is justified in not allowing these demands;

and to support this contention, we are referred to Section 82 of the Consolidation Act. By this section it is provided, *inter alia,* that "no demand upon the Treasury shall be allowed by the Auditor in favor of any person or officer *in any manner indebted thereto,* without first deducting the amount of such indebtedness."

We have no doubt that the petitioner, though a corporation, is a person within the meaning of the clause above quoted. We can not conclude that the law-makers intended to make one rule for natural persons and another for artificial persons as to the subject-matter of this clause. The word "person" here is intended to include persons both natural and artificial.

If this indebtedness for taxes bring the petitioner within the provision above quoted from the Consolidation Act, the Auditor is justified in not allowing the demands.

The question to be determined is the effect of the delinquency of a person in the payment of taxes, on his right to have a claim allowed against the City and County Treasury.

It will be observed that the language quoted from the above-mentioned Section 82 is broad and general. It refers to a person "*in any manner indebted thereto,*" *i. e.,* to the City Treasury. Taxes are not debts due by contract, express or implied. Such is the remark made in the opinion in *Perry* v. *Washburn,* 20 Cal. 350, by Field, C. J., in relation to the proper meaning of the word "debts" in the Act of Congress passed twenty-fifth of February, 1862, commonly known as the *Legal Tender Act.* Referring to the provision in that Act, which declares that the notes issued under its authority shall be "a legal tender in payment of all debts, public and private," the opinion proceeds: "Taxes are not debts within the meaning of this provision. A debt is a sum of money due by contract, express or implied. A tax is a charge upon persons or property to raise money for public purposes. It is not founded upon contract; it does not establish the relation of debtor and creditor; it does not draw interest; it is not the subject of attachment; and it is not liable to set-off. It owes its existence to the action of the legislative power, and does not depend for its validity and enforcement upon the individual assent of the tax-payer. It operates *in invitum.*"

That a sum of money does not draw interest, is not the subject of attachment, and is not liable to set-off, does not prevent it from being a debt. At common law, debts did not draw interest, were not subject to attachment, and were not liable to set-off. There was a limited power in courts of equity to set off or compensate one debt for another, under certain circumstances (see Story's Eq. Jur., §§ 1431, 1432, 1433), but the general right of set-off was allowed by the statutes passed in the reign of George II. Interest on debts was not allowed until authorized by statutory enactment, and it is well known that attachment or garnishment grew out of a custom which prevailed in the city of London, and had no existence outside of that city until allowed by statute. The process of attachment in the various States of the Union exists by virtue of legislative acts. These qualities of a debt might by legislative action be made to apply to taxes. I know of no restriction upon the power of the Legislature which could prevent it from passing such a law. But, as is remarked in the opinion above cited, "the term debt, it is true, is popularly used in a far more comprehensive sense, as embracing not merely money due by contract, but whatever one is bound to render to another, whether from contract or the requirements of the law," and I am of opinion that the form of expression used in the eighty-second section above mentioned is used in the larger sense; that when the Legislature employed the words "in any manner indebted," it referred to a case of obligation to pay, however such obligation arose, whether from contract or by operation of law. Under our revenue laws the sum mentioned in the answer as due and unpaid for taxes, when paid, goes into the City Treasury, and is due to it. The view above taken is sustained by Section 3716 of the Political Code, which is as follows:

"Every tax has the effect of a judgment against the person, and every lien created by this title has the force and effect of an execution duly levied against all property of the delinquent; the judgment is not satisfied nor the lien removed until the taxes are paid or the property sold for the payment thereof." The law here creates the personal obligation to pay, and to pay a sum certain and fixed by lawful authority. These, *i. e.,* the personal obligation and the certainty of the

sum, are the most striking characteristics of a debt. (See further on this point, *Moore* v. *Patch,* 12 Cal. 270; *People* v. *Seymour,* 16 id. 340; *Dugan* v. *Baltimore,* 1 Gill & J. 499; 2 Bl. Com. 464, 465.)

If the petitioner has any legal defense to the payment of the taxes herein referred to, such defense could not be made in an action for the writ of mandate.

The legislation as interpreted above is eminently just and reasonable. A tax-payer should not be allowed to have a claim against a municipal corporation satisfied when he owes to such corporation the money which goes to furnish the means of discharging his claim.

If the facts are as set forth in the answer (and for the purposes of this opinion they must be held to be so), the Auditor is justified in withholding his allowance from the demands of the petitioner. It was within the discretion vested in him by law to refuse his *allocatur,* and it was his duty to do so.

As the case now stands, the writ should be denied. But for the purpose of bringing before the Court the question discussed in the opinion of Justice Ross, I concur in the order of reference.

McKINSTY, J., dissenting:

Because, at the hearing, certain allegations in the answer were admitted to be true, I am of opinion, as at present advised, that the writ ought not to issue, and therefore dissent from the order. With reference, however, to all questions involved, I reserve to myself the benefit of any further argument on the coming in of the report of the referee appointed by the Court.