[No. 16017.   Department One.—February 21, 1896.]

# D. S. WEAVER, APPELLANT, v. CITY AND COUNTY OF SAN FRANCISCO, RESPONDENT.

SAN FRANCISCO—CLAIM FOR SERVICES TO FIRE DEPARTMENT—DEFICIENCY OF FUNDS—EXCESS IN ELECTION EXPENSES.—One having a claim against the city and county of San Francisco for labor performed upon engine houses, under employment of the officers in charge of the fire department, cannot obtain a right to receive payment for his services out of the income and revenues of the city for any year subsequent to that in which his claim accrued, on the ground that the funds in its treasury were depleted by a large excess in the expenses of a general election over the estimate made therefor by the supervisors.

ID.—MUNICIPAL CORPORATIONS—LIMITATIONS OF POWERS—DEPLETION OF TREASURY—NOTICE TO CLAIMANTS.—Whoever deals with a municipality does so with notice of the limitation of its power, and that he can receive compensation for his labor and materials only from the revenues and income previously provided for the fiscal year during which his labor and materials are furnished, and that all others dealing with the municipality have the same rights and are subject to the same limitations as himself; and he is further chargeable with notice that funds in the treasury sufficient to meet the amount of his claim are liable to be paid out for municipal expenditures before his contract can mature into a claim against the city, and that if others whose claims have accrued subsequent to his are able to intercept those funds, he has no claim in the nature of a lien upon them, and is in the condition of a creditor the assets of whose debtor are exhausted before his claim is presented for payment.

ID.—EXPENSES OF FIRE DEPARTMENT—ONE-TWELFTH ACT—VOID CLAIM.— Under the one-twelfth act a claimant can have no right of action for labor and materials furnished to the fire department during a month in which the supervisors had ordered paid more than one-twelfth of the amount allowed for the total expenses of the fire department for the year.

ID.—CLAIM VALID IN ITS INCEPTION—JUDGMENT—LIMITATION TO REVENUE OF YEAR.—A claim for labor and materials furnished to the fire department during a month for which it does not appear that the supervisors had allowed more than one-twelfth of the sum appropriated for the expenses of the fire department for the year, is valid in its inception; and the claimant is entitled to recover judgment therefor against the city; but such judgment should contain a direction that it be satisfied only out of the income or revenue provided by the city for the fiscal year in which the liability in his favor was incurred, and whether the income of that year has been exhausted or not is immaterial.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.   D. J. MURPHY, Judge.

The facts are stated in the opinion of the court.

111 319
112 164

111 319
118 529
c118 530
118 556

111 319
119 45
119 46
119 228

111 319
131 298
131 307
131 309
131 310
131 311

111 319
f135 500
135 501

111 319
o143 180

111 319
146 731

*J. C. Bates,* for Appellant.

The power or authority to purchase and contract for the current expenses of a city government necessarily implies the authority to provide the necessary means or revenue to pay for the same. (*Lewis* v. *Widber,* 99 Cal. 412.) A contract made by authority of law is as sacred as the employment of city officials under provision of law. (*Ryan* v. *Carter,* 93 U. S. 82.) The city is estopped, in a case where the supplies are received or labor and material furnished under a valid contract, to question the misappropriation of the revenue for other objects, however meritorious. (Wharton on Contracts, 185; 1 Dillon on Municipal Corporations, 4th ed., secs. 459, 460.) When a corporation has received the benefit of an executed contract, it cannot throw up such contract unless it put the other party in *statu quo.* (Wharton on Contracts, 184; *Hitchcock* v. *Galveston,* 96 U. S. 351; *Mayor* v. *United States,* 49 Fed. Rep. 40; 1 Co. Ct. App. 151; *Louisiana* v. *St. Martin's Parish,* 111 U. S. 716; *Appeal of City of Erie,* 91 Pa. St. 398; *Grant* v. *Davenport,* 36 Iowa, 396.) A contract having been entered into between the parties valid at the time by the law of the state, it is incompetent, even for the legislature, to pass an act impairing its obligation, much less could any decision of the court have that effect. (*Chicago* v. *Sheldon,* 9 Wall. 55; *Meriwether* v. *Garrett,* 102 U. S. 520.)

*H. T. Creswell,* City and County Attorney, for Respondent.

The entire claim of $4,517.17 falls within the prohibition contained in article XI, section 18, of the constitution. (Consolidation Act, Worley's ed., 28–30; *San Francisco Gas Co.* v. *Brickwedel,* 62 Cal. 641; *Shaw* v. *Statler,* 74 Cal. 258; *Schwartz* v. *Wilson,* 75 Cal. 502; *Lewis* v. *Widber,* 99 Cal. 412.) Ordinary debts created by the municipality itself, and not salaries fixed by law, must be paid out of the revenue of the year in which such indebtedness or liability was incurred by the mu-

nicipality.    (*Lewis* v. *Widber, supra; San Francisco Gas
Co.* v. *Brickwedel, supra; Shaw* v. *Statler, supra; Schwartz*
v. *Wilson, supra.*)    The prohibition extends as much to
the paying of a debt, in excess of the revenue for that
year, as to the incurring of one.    (*Shaw* v. *Statler, supra.*)
The inconvenience caused by the stopping of the wheels
of the municipal government as a result of a strict
adherence to the constitutional prohibition is the lesser
of two evils.    (*Law* v. *People*, 87 Ill. 390.)

HARRISON, J.—The plaintiff, in the months of November and December, 1892, performed certain labor in
plumbing, gasfitting, and tinning upon certain enginehouses of the defendant, under an employment by the
officers in charge of the fire department of the city,
amounting in value to the sum of $4,517.17.    Itemized
demands therefor, duly verified, were presented to the
officers of the defendant, and approved by the standing
committee on the fire department of the board of supervisors, but the auditing committee of said board refused
to allow the claims, and they were never audited or
allowed.    The present action was brought to recover
judgment against the defendant for the amount of these
demands.    The complaint was filed May 9, 1893, and
the answer upon which the case was tried was filed February 21, 1894.    In its answer the defendant sets forth
facts showing the sources and amount of the income
and revenue of the city and county for the fiscal year
ending June 30, 1893, and the different modes in which
this income and revenue had been disposed of and expended; and that, not only had this entire revenue and
income been exhausted, but that for debts and liabilities
incurred during that fiscal year there had been allowed
and audited by the proper officers of the city demands
against the city amounting to upwards of $200,000 in
excess of the amount of this income, and that this deficiency was represented by allowed, audited, and registered demands for the payment of which no money had
been provided; that in addition to this deficiency there

CXI. CAL.—21

were outstanding demands against the general fund amounting to the further sum of upwards of $100,000, which had never been audited, and that the demands of the plaintiff were payable only out of this general fund, and had never been allowed, audited or registered; that at the time this action was commenced, viz., May 9, 1893, the audited and registered demands against the city payable out of the general fund, together with the preferred claims for salaries during the remainder of the fiscal year, far exceeded in amount the income and revenue of the fiscal year then remaining in said general fund, and that on said ninth day of May, 1893, there was not and had not since been any money in the treasury of the defendant, or in any of the funds thereof, which could be applied to the payment of the plaintiff's demands. The cause was tried by the court, who made findings in accordance with these averments of the answer, and rendered judgment in favor of the defendant. The plaintiff has appealed directly from the judgment upon the findings contained in the judgment-roll.

The principles governing the decision of this case, as well as the provisions of law applicable thereto in support of the judgment of the superior court, have been so frequently pointed out by this court that it is only necessary to cite a few of the cases in which they are found. (*San Francisco Gas Co.* v. *Brickwedel*, 62 Cal. 641; *Shaw* v. *Statler*, 74 Cal. 258; *Schwartz* v. *Wilson*, 75 Cal. 502; *Lewis* v. *Widber*, 99 Cal. 412; *McGowan* v. *Ford*, 107 Cal. 177; *Smith* v. *Broderick*, 107 Cal. 644.)

In addition to the provisions in the constitution (art. XI, sec. 18) referred to in the foregoing cases, the consolidation act or charter of the city and county of San Francisco contains provisions applicable to the present case. By section 71 of that act the board of supervisors is directed, when making the levy of taxes for the fiscal year, to apportion and divide the taxes so levied and to be collected and applied to the several funds therein named, one of which is the general fund, and at the close of each fiscal year " the said board shall direct the

treasurer to transfer all surplus moneys of all funds excepting the school fund, after liquidating or providing for all outstanding demands upon said funds, to the general fund." Section 76 declares: " The general fund consists of all moneys in the treasury not designated and set apart by law to a specified use, and of the overplus of any special fund remaining after the satisfaction of all demands upon it." A surplus fund is also provided for, which is defined in section 76 to consist of " any moneys belonging to the general fund remaining in the treasury after the satisfaction of all demands due and payable which are specified in the first fourteen subdivisions in section 95." This surplus fund is further defined in the fifteenth subdivision of section 95 to be the surplus of money that shall remain in the treasury " at the end of each fiscal year, and after every lawful demand on the treasury then due and payable, or to accrue for that year, shall have been actually paid, taken up and canceled, and record thereof made in the proper books, or cash in the treasury have been set apart and reserved equal to the amount of said demands that may then be outstanding or to accrue for that year." It is further provided in this subdivision of section 95 that payments of demands on the treasury of said city and county may be made for " expenditures previously authorized by the board of supervisors, in the lawful exercise of their powers, for objects other than those specified in the preceding fourteen subdivisions of this section, out of this surplus fund as specified in sections 97 and 98, but not otherwise." The claim of the plaintiff is not included within the preceding fourteen subdivisions of this section. Section 97 declares that the powers of the board of supervisors enumerated in this act, so far as the exercise thereof may involve the expenditure of money otherwise than for the objects enumerated in the first fourteen subdivisions of section 95, "shall be deemed to extend only to authorizing the appropriation and application of any surplus moneys remaining in the treasury during any one fiscal year to the objects

specified in such enumeration of powers after the demands mentioned in the first fourteen subdivisions of section 95, due and payable during such fiscal year, shall have been paid"; and section 98 provides: " If any expenditures not authorized by this act be incurred, they can never be paid out of the treasury, nor shall they be deemed to constitute or lay the foundation of any claim, demand, or liability, legal, equitable, or otherwise, against the said city and county.   If expenditures be incurred which are authorized by this act to be paid out of the surplus funds in the treasury, but not for the preferred objects specified in section 96 (those enumerated in the first fourteen subdivisions of section 95), such expenditures can only be paid out of such surplus funds and revenues strictly appertaining to the fiscal year in which such expenditures have been ordered, or the contracts therefor entered into, and cannot be carried forward and paid out of any revenues accruing and receivable into the treasury for any subsequent year."

The court finds that the board of supervisors, at the time of levying the tax to provide for the expenses of the fiscal year ending June 30, 1893, estimated the expenses of the general election to be held November 8, 1892, to be $140,000, and provided that sum and no more for that purpose; but that claims and demands for the expenses of said election, amounting in the aggregate to the sum of $293,998.23 had been allowed and paid by the treasurer out of the general fund.   This excess of the expenses of the election over the estimate therefor, and its payment out of the general fund, however much it may have depleted the fund out of which the plaintiff would have been entitled to receive payment for his labor, does not give him a right to receive such payment out of the income and revenues of the city for any other year subsequent to that in which his claim accrued. Whether the expenses thus incurred were proper or not cannot be investigated in this action, since those by whom they were incurred, or to whom they were payable, are not parties hereto.   The court finds that those

claims and demands were allowed by the board of election commissioners " under the authority vested in it," and it must therefore be assumed that all of these expenses were necessary, and were properly incurred, and consequently that their payment was a legitimate disbursement of the revenues of the city.    The expense of this election was one of the items which the board of supervisors was called upon to consider when determining the amount of tax to be levied for that fiscal year; and, if the estimate which they made of the amount which would be expended was inadequate, the payment of the expenses incurred was not thereby limited to the amount of the estimate, any more than would be the payment of any other expense which is payable out of the general fund, where the actual expense proved to be greater than was estimated as the basis of the tax to be levied.    Whoever deals with a municipality does so with notice of the limitation of its powers, and with notice also that he can receive compensation for his labor or materials only from the revenues and income previously provided for the fiscal year during which his labor and materials are furnished; and with the knowledge, too, that all other persons dealing with the municipality have the same rights to compensation and are subject to the same limitations as he is.    Even though at the time of making his contract there are funds in the treasury sufficient to meet the amount of his claim, he is charged with notice that these funds are liable to be paid out for municipal expenditures before his contract can mature into a claim against the city, and, if others whose claims have accrued subsequent to his are able to intercept these funds, he is in the same condition as any creditor who has dealt with one whose assets are exhausted before he presents his claim.    He acquires no claim in the nature of a lien upon these funds for the amount of his demand, nor is there any legal obligation upon the municipality, any more than upon any other debtor, to pay the claims against it in the order in which they are incurred, unless they are

presented in that order, and in such condition and with such formalities as entitle the claimant to immediate payment. In dealing with the municipality he must rely upon the integrity of its officers that they will not incur any liabilities during the year in excess of the income and revenues provided for that year, and, as a prudent man, he will ascertain not only the amount of that income, but also the amount of the claims already existing, and of those that are likely to be incurred.

The court finds that of the amount of the plaintiff's claim $2,290.48 was furnished between the 22d of November and the 1st of December, 1892, and the sum of $2,226.69 between the thirteenth and twenty-ninth days of December. By the act of March 26, 1878 (Stats. 1878, p. 556), the amount which the board of supervisors may appropriate for the expenses of the fire department, which include the claim of the plaintiff, is $80,000 in each year; by section 1 of the act of February 25, 1878, page 111, commonly known as the one-twelfth act, it is made unlawful "to contract for, or render payable in the present or future, in any one month, any demand or demands against the treasury" in excess of one-twelfth of this amount. Section 2 declares: "All contracts, authorizations, allowances, payments and liabilities to pay, made or attempted to be made in violation of section 1 of this act, shall be absolutely void, and shall never be the foundation or basis of a claim against the treasury of said city and county." The court finds that during the month of November, 1892, and prior to the twenty-second day thereof, the board of supervisors had allowed and ordered paid demands against said fund of $80,000, amounting to the sum of $10,645.49. It follows that the plaintiff has no right of action for the labor and materials furnished during the month of November. The court does not, however, find that any part of the appropriation applicable to the month of December had been allowed or ordered paid, and it must be assumed that at the time the plaintiff was employed to render the services in December there

was an unexpended portion of this appropriation with which to meet his claim. The contract between him and the city was therefore valid in its inception, and upon its completion he had a valid right of action against the city, which he was authorized to have established by the judgment of a court of record. The depletion of the treasury, or the application of the funds therein to other claims before the trial of the action, was not a satisfaction of the plaintiff's claim, nor did it constitute a defense to his action. He was still entitled to a judgment, with the direction therein that it should be satisfied only out of the income or revenue provided by the city for the fiscal year in which the liability in his favor was incurred. This, indeed, would be the appropriate form at all times in which to render a judgment against a municipality, whenever in an action brought against it for any liability or indebtedness incurred by it the court shall determine that judgment should be given against it. As the constitution limits the obligation of the municipality upon any indebtedness or liability that it may incur to the income and revenue provided by it for that year in which such indebtedness and liability is incurred, the means for satisfying a judgment which establishes that obligation is equally limited, and it is eminently suitable that the mode of satisfaction should be made a part of the judgment. (See *Smith* v. *Broderick*, 107 Cal. 644.) Whether the income for that year has been exhausted or not is immaterial. The rights of the parties are measured by the terms of the constitution, and not by this fact. In the present case it appears from the findings of the court that the whole amount of the tax that was levied for the fiscal year ending June 30, 1893, has not been collected, and it may be that in the future there will be received into the treasury from this tax a sufficient amount of money from which the plaintiff's claim may be satisfied. At all events he has the right to a judgment against the city for the amount of his claim, with the limitation that it shall be satisfied out of the income

and revenue provided for the fiscal year ending June 30, 1893, after the payment of such other demands against such income as are properly payable in preference to his own.

The judgment is reversed, and the superior court is directed to enter a judgment in favor of the plaintiff and against the defendant for the sum of $2,226.69, and directing that the same be satisfied out of the income and revenues of the defendant provided for the fiscal year ending June 30, 1893, in accordance with the foregoing opinion.

GAROUTTE, J., and VAN FLEET, J., concurred.