[Civ. No. 1343.    Third Appellate District.—June 29, 1915.]

J. C. ARTHUR, Respondent, v. CITY OF PETALUMA (a Municipal Corporation), Appellant.

MUNICIPAL CORPORATIONS—CONTRACTS—COMPETITIVE BIDDING.—A contract made by a municipality without soliciting bids where the statute prescribes the competitive method, is illegal, and imposes no obligation or liability on the city.

ID.—PUBLICATION OF FREEHOLDERS' CHARTER—CONTRACT FOR—VALIDITY OF.—A municipal corporation is not warranted in rejecting a bill

for the publication of a proposed freeholders' charter in the newspaper to which the contract for the city printing had been awarded for one year, after notice inviting bids therefor, based on the contract price, on the ground that the bill was excessive, notwithstanding the minute book of the board of trustees failed to disclose that the board ever at any time adopted by a formal resolution any specifications for the printing as required by an ordinance of such city, where it is shown that such specifications were on file with the clerk of the board and bore his indorsement.

ID.—PRINTING OF CHARTER—CITY "ADVERTISING."—The printing of a freeholders' charter constitutes "advertising" as that term is used in the General Municipal Act and city ordinance providing for the awarding of contracts for city printing and advertising.

ID.—LETTING OF CONTRACTS FOR PRINTING—CONSTRUCTION OF MUNICIPAL CORPORATION ACT.—The concluding phrase "all other printing," used in section 777 of the General Municipal Corporation Act as amended in 1891, declaring that "the board of trustees shall annually, at a stated time, contract for doing all city printing and advertising, which contract shall be let to the lowest bidder after notice, as provided in this section, and the contract therefor shall be awarded separately from all other printing," has reference to all city printing not included in the term "advertising."

ID.—RESOLUTION FOR PRINTING CHARTER—DESIGNATION OF NEWSPAPER UNNECESSARY.—It is not necessary that the resolution directing the publication of the charter should recite the name of the newspaper in which it should be published, as it is sufficient to recite that the charter be published "according to law."

ID.—CONSTITUTIONAL LAW—INCURRING OF INDEBTEDNESS EXCEEDING INCOME—EXPENSE OF PUBLICATION OF CHARTER.—The publication of such charter was an obligation imposed by law, and the expense therefor is not within the inhibition of section 18 of article II of the constitution providing that "No city . . . shall incur any indebtedness . . . exceeding in any year the income and revenue provided for it for such year, without assent of two-thirds of the qualified electors."

APPEAL from a judgment of the Superior Court of Sonoma County. Emmet Seawell, Judge.

The facts are stated in the opinion of the court.

G. P. Hall, City Attorney, and W. F. Cowan, for Appellant.

Lippitt & Lippitt, C. F. Fury, and R. L. Thompson, for Respondent.

BURNETT, J.—The appeal is from the judgment in favor of plaintiff for something over four thousand dollars for the publication in his newspaper of a freeholders' charter of the city of Petaluma. Prior to March 8, 1911, said city was a municipal corporation of the fifth class under the general Municipal Corporation Act. On February 14, 1911, at a special election, said city adopted a freeholders' charter and, on March 8, 1911, it was approved by the legislature and filed with the secretary of state. On December 5, 1910, the board of trustees of said city passed the following resolution: "The president of the board of trustees having presented to this board the freeholders' charter drafted by the board of freeholders, elected by the people of the city of Petaluma to draft and return a charter for said city, same appearing in form, I move that this board accept the same and that the clerk be, and he is hereby, directed to have said charter published in the manner and form provided by law." Thereafter, plaintiff received from the deputy clerk, who performed virtually all the duties and functions of the clerk, a draft of said charter for publication. Plaintiff published and advertised said charter in the *Daily Courier* for the required twenty days, from December 15, 1910, to January 11, 1911, inclusive. He thereafter presented his bill for said publication in accordance, as he claims, with his contract with said city based upon competitive bids for the yearly printing. The bill was rejected by the board of trustees on the ground that it was excessive.

The contention of plaintiff that he had a contract with the city is founded upon these facts disclosed by the record: May 16, 1910, the city trustees of Petaluma granted the clerk authority "to advertise for bids for city printing for the fiscal year of 1910–1911." In pursuance of that order or direction the clerk published the following notice: "Notice to Contractors: The undersigned invites and will receive at his office in the city hall, Petaluma, California, up to 7:30 P. M., June 6th, 1910, sealed bids for city printing as per specifications on file and obtainable at the city clerk's office. The board of trustees reserves the right to reject any and all bids. J. A. Peoples, City Clerk, Petaluma." Specifications thus referred to were on file with the clerk and contained, among numerous other items, the following reference to advertising:

"Advertising done by order of the board of trustees in daily paper per inch, brevier type set solid:

First insertion.................................. $......

Each subsequent insertion........................ $...."

June 6, three bids for city printing were filed and referred to the finance committee. June 27th, the finance committee approved and the following awards were made: "Contract for advertising and printing assessment-roll awarded to the Petaluma Courier Company." "Contract for all city printing awarded to Sonoma Independent." Thereafter plaintiff gave a bond in the sum of two hundred dollars "to do all the advertising of said city of Petaluma in a good workmanlike manner," the bond reciting that "the board of trustees of the city of Petaluma did duly and regularly award the contract for city advertising for one year, from the 1st day of July, 1910, to J. C. Arthur, owner and editor of the Petaluma *Daily Courier*." This bond was approved by the board.

The action of the board in calling for bids was admittedly based upon the provisions of section 777 of the General Municipal Act as amended in 1891 (Stats. 1891, p. 54) and section 4 of ordinance 28 of the city of Petaluma. The former is as follows: "The board of trustees shall annually, at a stated time, contract for doing all city printing and advertising, which contract shall be let to the lowest bidder after notice, as provided in this section, and the contract therefor shall be awarded separately from all other printing." The notice is therein required to be published for at least two weeks in a newspaper of general circulation published in said city and "such notice shall distinctly and specifically state the work contemplated to be done."

The said ordinance provides: "The board of trustees of the city of Petaluma shall, on the first regular meeting of the month of May of each year, contract for all city printing and advertising; said contract shall be let to the lowest bidder, after one week's notice by publication in said city, and the board of trustees to prepare a schedule of the amount and character of the work of each ensuing year; a proposal shall specify the amount to be charged for each separate piece of work."

Plaintiff's bid seems to have been in regular form and concluded with this declaration: "I, J. C. Arthur, manager of the Petaluma Courier Company, hereby agree to furnish

27 Cal. App.—50

the labor and material for whatever printing may be awarded to me as per the foregoing specifications, the same to be first-class as to material and workmanship, and at the prices herein named.''

Appellant, in the interesting briefs of counsel, contends: ''First—The plaintiff had no contract with the city of Petaluma for doing this work, because (1) The city had never adopted any specifications or made any estimate as required by law upon which to base an invitation for bids or upon which to receive bids. (2) The pretended contract was not let separately from 'all other printing.' (3) This character of printing does not come within the catagory of 'advertising done by order of the board of trustees in a daily newspaper.' (4) Said printing does not come within the definition of 'advertising.' (5) The board of trustees never awarded to plaintiff any contract for this character of work. Second—The board of trustees never directed plaintiff to publish said proposed charter; and, Third—The demand for said work was void because repugnant to the provision of the constitution of the state which requires that no such demand shall be allowed when no provision has been made for the payment thereof out of the annual revenue of the city.''

It is not doubted that the principle of law at the basis of the questions involved herein is as quoted by appellant: ''A contract made by the municipality without soliciting bids where the statute prescribes the competitive method is illegal'' (*Baltimore* v. *Keyser,* 72 Md. 106, [19 Atl. 706]), and ''imposes no obligation or liability on the corporation.'' (*Van Reipen* v. *Jersey City,* 58 N. J. L. 262, [33 Atl. 740].) ''If the statute conferring a municipal power prescribes the manner in which it shall be exercised this is generally held exclusive of all others so that any attempt to exercise it in a different manner will be void.'' (*McCoy* v. *Briant,* 53 Cal. 247),

In this connection we may call attention, also, to the following from Dillon on Municipal Corporations (5th ed.), sec 807: ''When by charter or statute a municipality can only let its contracts to the lowest bidder after advertisement an implied condition and restriction is placed upon the proceedings of the municipality that the various steps adopted by it to let a contract shall be of such nature and taken in such form as in *good faith to invite competition.* Hence, persons bidding must bid upon a uniform basis and the municipality

must take steps to determine in advance the nature of the improvement, the material of which it is to be constructed and to ascertain all those facts which are necessary to enable an intending bidder to comprehend the scope of the improvement and the nature of the supposed contract and bid accordingly. . . . The plans and specifications are essential to competitive bidding because it is only through their agency that there is a reasonable assurance that all bidders are competing upon the same basis and without favoritism and that no fraud enters into the award.''

While the learned author had specifically in view public improvements, it is manifest that his observations likewise apply to such public service as is herein involved.

Probably the most serious point made by appellant is the first one as stated above. It was stipulated at the trial that ''the minute-book does not show that the board of trustees of the city of Petaluma ever at any time adopted by a formal resolution any specifications for the printing.'' It is, however, a fact that the specifications to which we have referred were on file with the clerk of the board and bore the indorsement: ''Filed May 16, 1910. J. A. Peoples, City Clerk.'' It is a fair inference from the record that the document was recognized by the board and all parties as the schedule adopted and approved by the board of trustees, and it is not pretended that any bidder was misled or had any misgivings as to the validity of said schedule or that it was not accepted by all the bidders as the legal basis for their competitive act. We are satisfied that the evidence is legally sufficient to show that the board substantially complied with the requirement of the law ''to prepare a schedule of the amount and character of the work,'' although no formal resolution of adoption appears.

Besides, if appellant intended to rely upon this point, specific objection to that effect should have been made when the schedule was offered in evidence. The only objection was the general one that it was ''incompetent, irrelevant and immaterial.'' If attention had been called to this consideration, more direct evidence might have been offered that the schedule was prepared by or under the direction of said board. We do not understand that the only evidence of said action by the board must be found in the minute-book kept by the clerk or that said stipulation is inconsistent with respondent's

position that the said schedule was actually prepared by the board.

As to the classification of said publication, we entertain no doubt that it constituted "advertising" as generally understood and as that term is used in said statute and ordinance. Webster defines the term "advertise" to mean, among other things, "to inform; a publication intended to give notice; to publish," and the word "publish" to mean, "to proclaim, to advertise," etc. The word "printing" as used in said ordinance was correctly interpreted by the parties, we think, to include blanks and job work not requiring public notice through the paper and the term *advertising* to embrace all legal matters to be printed and published in a newspaper. This distinction was made in the specifications on file with the clerk and was recognized by the bidders.

In this connection it is to be observed that said general statute is rendered somewhat obscure by the use of the concluding phrase: "all other printing." The last clause of said section formerly read: *"All advertising shall be done in a newspaper printed and published in such city* and the contract therefor shall be awarded separately from all other printing." In 1891 the portion we have italicized was omitted for some reason. It may have been an inadvertence of the legislature or a mistake of the printer, as suggested by respondent, but, of course, we must accept the law as we find it. While the language is not free from doubt, we think the legislature intended the concluding words to refer to all city printing not included in the term "advertising." The latter is the only distinct class of printing that is recognized in the statute and all other printing is included in the expression "all city printing" and "all other printing." The fair construction, in other words, is that separate awards shall be made of the *advertising* and of *all other city printing.* This seems to have been done by the board of trustees. The contract for advertising was let to plaintiff on the basis of a certain bid and he was also awarded the printing of the assessment-roll on his separate bid of thirty dollars. The other printing was let to another bidder. We fail to see in this respect any departure from the requirement of the law.

As to the sufficiency of the schedule itself we think there can be no reasonable doubt. It was impossible, of course, to specify the amount of the advertising that would be required

during the year or its precise character. We cannot say that a sufficient basis for competitive bidding was not presented in the reference hereinbefore set out. We do not know whether such an amount of advertising as the publication of the charter was contemplated when the bids were made, but it is fair to assume that such contingency was in view of the parties and influenced their action.

Plaintiff's bid having been legally made and having been accepted by the board and his bond having been approved, it would, of course, follow that a contract was entered into for all advertising during the year. No express direction would therefore be required to plaintiff to publish said charter. The law made it the duty of the board to have said charter published for twenty days, and it was sufficient for said board to direct that said charter be published "according to law." It could be published "according to law" only in the paper to which all advertising had been awarded. Hence, when plaintiff had advertised the charter for twenty days a claim arose in his favor against the city in accordance with the accepted bid. We think there is no force in the suggestion that the Petaluma *Courier* should have been specified in said order of publication. As a matter of fact, it is clear from the conduct of the parties that it was intended that the *Courier* should do the work, but we deem it unnecessary to detail the circumstances further.

As to the last objection of appellant, respondent points out that there was deposited in the general fund, from January 10—the day when the last publication was made—to July the sum of $21,686.81, that all this was expended but over nine thousand dollars of it was for debts and expenses incurred subsequently to the charter publication obligation. We need not enumerate those items, but it is clear that plaintiff's claim could not thus be defeated. For a comprehensive discussion of said constitutional provision we may refer to *Higgins* v. *San Diego,* 131 Cal. 294, [63 Pac. 470], and *Marin Water etc. Co.* v. *Town of Sausalito,* 168 Cal. 587, 604, [143 Pac. 767.]

It is also true that the publication of the charter was an obligation imposed by law. Such expense was not therefore within the inhibition of section 18 of article II, of the constitution, providing that "No city . . . shall incur any indebtedness . . . exceeding in any year the income and revenue provided for it for such year, without assent of the two-thirds

of the qualified electors.'' (28 Cyc. 1541; *Gubner* v. *Mc-Clellan*, 130 App. Div. 716, [115 N. Y. Supp. 755].)

Respondent contends that upon the assumption that the proceedings culminating in said contract were irregular the city is estopped from denying its liability on the ground that it acquiesced in the publication with full knowledge that the service was being performed and that it received the full fruit and benefit of such publication. Appellant's position as to this is that the city's liability would extend only to the reasonable value of the service. The authorities are extensively cited and reviewed, but as we feel that appellant's attack upon said proceedings must fail, the other contention need not be considered.

It may be true that the publication could have been had for less money, but as the contract seems to have been fairly made in substantial compliance with the requirement of the law and there is no evidence of fraud or lack of good faith, we consider it our duty to affirm the judgment and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 26, 1915.