[S. F. No. 8174. In Bank.—May 31, 1917.]

## J. C. ARTHUR, Petitioner, v. CITY OF PETALUMA (a Municipal Corporation), et al., Respondents.

Municipal Corporations—Limitations on Incurring Indebtedness—Payment from Revenue of Subsequent Year—Judgment Against City.—Section 18 of article XI of the state Constitution, providing that "no . . . city . . . shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose. . . . Any indebtedness or liability incurred contrary to this provision, . . . shall be void," precludes a municipality from paying a general money judgment against the city, based upon a valid claim for work done for it in a previous fiscal year, out of moneys collected from taxes levied for a subsequent year for the express purpose of paying such judgment. This follows, although at the time the work was done there was sufficient money in the city treasury of the revenue of that fiscal year to pay the claim, but at the time the demand therefor was presented the revenues provided for that fiscal year had been exhausted.

Id.—Indebtedness cannot be Paid Out of Revenue of Future Year.—That constitutional provision means, not only that an indebtedness incurred contrary to its express provisions is absolutely void, but that each year's income and revenue must pay each year's indebtedness and liability, and that no indebtedness or liability incurred in any one year shall be paid out of the income and revenue of any future year.

Id.—Reduction of Claim to Judgment Does not Authorize Payment.—The fact that the claimant has obtained a judgment against the city for the amount of his claim in an action brought for that

purpose does not avoid the application of such constitutional provision.

ID.—ACT OF MARCH 23, 1901, DOES NOT AUTHORIZE PAYMENT FROM FUTURE REVENUE.—The act of March 23, 1901 (Stats. 1901, p. 794), providing for the payment by the treasurer of any county, city, etc., of any final judgment "now existing or that may be obtained hereafter against any county, city," etc., and requiring the governing body of the city "to include in the tax levy for the next fiscal year a rate sufficient to pay all final judgments existing against" such city, cannot be held available for the enforcement of a demand against the revenue and income of a fiscal year subsequent to that in which the liability on which the demand is based was incurred.

ID.—CLAIM FOR PUBLISHING FREEHOLDERS' CHARTER A MUNICIPAL INDEBTEDNESS.—A claim against a municipality, based upon the publication in a newspaper of a proposed freeholders' charter, proceedings for the adoption of which by the city were then pending in accord with provisions of section 8 of article XI of the Constitution, and which publication was made by the claimant under an existing contract held by him for doing the city printing, is an indebtedness incurred by the municipality, and the immediate result of a contract by it.

APPLICATION for a Writ of Mandate to compel the allowance and payment of a claim against the City of Petaluma.

The facts are stated in the opinion of the court.

Lippitt & Lippitt, R. L. Thompson, and Newton A. Johnson, for Petitioner.

G. P. Hall, W. F. Cowan, and E. J. Dole, for Respondents.

ANGELLOTTI, C. J.—This is a proceeding in mandate to compel the allowance and payment of a claim of petitioner against the city of Petaluma. The proceeding was commenced in the district court of appeal of the third appellate district, and was ordered transferred to this court because of the inability of the judges of that court to agree upon a judgment.

Petitioner's claim was for printing done by him for the city during the fiscal year 1910–11, in his newspaper, the "Petaluma Daily Courier," the contract for city printing for that year having been awarded to him as the lowest bidder for the work. The particular printing was the publication

in said paper of a proposed freeholders' charter, which the trustees of the city had ordered published "in the manner provided by law." When the printing was done there was sufficient money in the city treasury of the revenue of that fiscal year to pay petitioner's claim. His demand in due form for the amount alleged to be due was filed with the city clerk on March 28, 1911, but at that time the revenues provided for the fiscal year had been entirely exhausted. The claim was disallowed. Petitioner brought his action against the. city thereon, and in September, 1912, obtained a judgment for the full amount of his claim. That judgment was subsequently affirmed on appeal. (*Arthur* v. *City of Petaluma*, 27 Cal. App. 782, [151 Pac. 183].) It was substantially found therein that the claim was in all respects valid, and that at the time the claim was presented for payment the funds of the fiscal year had been exhausted by the payment of other claims incurred or attempted to be incurred subsequent to the claims of plaintiff. The judgment was an ordinary judgment against the city for the amount claimed. The county clerk of Sonoma County having certified this judgment to the auditor and municipal governing body of the city, in accord with the provisions of an act of the state legislature providing for the payment of judgments against counties, cities, etc., approved March 23, 1901 (Stats. 1901, p. 794), the city council, as provided by the act, included in the tax levy for the fiscal year 1916–17, a sum expressly devoted to the payment of the judgment and sufficient to pay the same. This tax was collected, and is now in the treasury of the city expressly set aside for the payment of the judgment. Nevertheless the city now refuses to pay the claim or any part thereof. Hence this proceeding.

The claim of the city substantially is that section 18 of article XI of the state Constitution precludes payment of this claim incurred in the fiscal year 1910–11 from any of the revenue resulting from the tax levy by the city council for the fiscal year 1916–17. Whatever might be our view in the absence of previous decisions of this court, we are satisfied that the construction given to this section of our Constitution by a long line of decisions is such as to compel us to sustain this claim of the city.

Section 18, article XI, of the Constitution, so far as here applicable, reads to-day as it did when first adopted in the

year 1879. The language is: "No . . . city . . . shall incur
any indebtedness or liability in any manner or for any pur-
pose exceeding in any year the income and revenue provided
for such year, without the assent of two-thirds of the quali-
fied electors thereof, voting at an election to be held for that
purpose. . . . Any indebtedness or liability incurred con-
trary to this provision, . . . shall be void." Certain amend-
ments to this section made in the year 1900 permitting the
city and county of San Francisco to pay unpaid claims of
previous fiscal years out of the income and revenue of suc-
ceeding fiscal years, and the city of Vallejo to pay an existing
indebtedness "whenever two-thirds of the electors thereof,
voting at an election held for that purpose, shall so decide,"
if they have any bearing upon the question, would seem to
be entirely in line with the previous construction given by
the court to the section and to support the proposition that
the limitation of the constitutional provision can only be over-
come by a two-thirds vote of the electors or by a constitu-
tional amendment to meet the particular case.

The constitutional provision was first considered by this
court in *San Francisco Gas Co.* v. *Brickwedel,* 62 Cal. 641,
and was given a broad and liberal construction in view of
the object it was desired thereby to attain. Under a strict
construction it might possibly have been held that its only
effect was to make void any indebtedness or liability incurred
in excess of the income and revenue provided for the year,
without the assent of two-thirds of the electors expressed at
an election, leaving such indebtedness or liability as was not
in excess of such income and revenue at the time of its crea-
tion unaffected by the provision, and a valid claim payable
out of the revenue of succeeding years. But the court,
through Mr. Justice Ross, said that it meant, not only that
an indebtedness incurred contrary to its express provisions
was absolutely void, but that "each year's income and rev-
enue must pay each year's indebtedness and liability, and
that no indebtedness or liability incurred in any one year
shall be paid out of the income or revenue of any future
year." It was also said:

"The system previously prevailing in some of the muni-
cipalities of the state by which liabilities and indebtedness
were incurred by them far in excess of their income and rev-
enue for the year in which the same were contracted, thus

creating a floating indebtedness which had to be paid out of the income and revenue of future years, and which, in turn, necessitated the carrying forward of other indebtedness, was a fruitful source of municipal extravagance. The evil consequences of that system had been felt by the people at home and witnessed elsewhere. It was to put a stop to all of that, that the constitutional provision in question was adopted. The change was eminently wise. A somewhat similar provision in the old Constitution with respect to state indebtedness saved the people of the state a vast amount of money. (*People* v. *Johnson,* 6 Cal. 503; *Nougues* v. *Douglass,* 7 Cal. 65.) We have neither the right nor the disposition, by judicial interpretation, to take away the wholesome restriction upon municipalities thus imposed by the Constitution. Of course, in giving effect to this radical change from the pre-existing condition of things, it will not be strange if some shall be found to suffer. But it must be remembered that all are presumed to know the law and that whoever deals with a municipality is bound to know the extent of its powers. Those who contract with it, or furnish it supplies, do so with reference to the law, and must see that limit is not exceeded. With proper care on their part and on the part of the representatives of the municipality, there is no danger of loss.''

In *Shaw* v. *Statler,* 74 Cal. 258, [15 Pac. 833], it was held that the statement that ''no indebtedness or liability incurred in any one year shall be paid out of the income or revenue of any future year'' was a correct statement as to the meaning of the section, ''at least in so far as the revenue of any particular year is required for the expenses of that year,'' it not being necessary to go further in that case. But in *Schwartz* v. *Wilson,* 75 Cal. 502, [17 Pac. 449], where it was attempted to pay a claim absolutely valid in all respects incurred in the fiscal year 1883–84 out of revenues for the fiscal year 1884–85, the statement in *San Francisco Gas Co.* v. *Brickwedel,* 62 Cal. 641, was deemed to settle the proper construction of the section and forbid such payment. It has apparently never since been questioned that it is the construction that must be given the section, except for statements in one or two dissenting opinions. It was accepted as correct and followed in *McGowan* v. *Ford,* 107 Cal. 177, [40 Pac. 231], *Smith* v. *Broderick,* 107 Cal. 644, [48 Am. St. Rep. 167, 40 Pac. 1033], *Weaver* v. *San Francisco,* 111 Cal. 319, [43 Pac. 972],

*McBean* v. *Fresno*, 112 Cal. 159, [53 Am. St. Rep. 191, 31 L. R. A. 794, 44 Pac. 358] , *Bradford* v. *San Francisco*, 112 Cal. 537, 545, [44 Pac. 912] , *Higgins* v. *San Diego*, 118 Cal. 524, [45 Pac. 824, 50 Pac. 670] , *Montague* v. *English*, 119 Cal. 225, [51 Pac. 327] , *Higgins* v. *San Diego*, 131 Cal. 294, [63 Pac. 470] , *Fresno etc. Co.* v. *McKenzie*, 135 Cal. 497, [67 Pac. 900], and *County of Tehama* v. *Sisson*, 152 Cal. 167, 172, [92 Pac. 64]. Under these decisions, lack of available money of the revenue of the fiscal year against which the claim constitutes a charge, from whatever cause, and entirely regardless of the absolute validity of the claim, is a complete answer to any attempt to enforce *payment* from what are styled in some of the later of the cases cited, "the ordinary revenues" of the city for succeeding years. To this term we shall refer later. This is perhaps shown most emphatically and clearly by what is said in *Weaver* v. *San Francisco*, 111 Cal. 319, [43 Pac. 972]. The views there expressed have never been modified, except as to the proper form of judgment to be given the holder of a valid claim. Having a valid claim, one valid when the indebtedness was incurred, the subsequent exhaustion of funds from which the same could be paid before the claimant was able to obtain formal allowance and payment does not make his claim bad, but only affects his remedy to obtain *payment,* and he is entitled to have his claim established by a judgment for the amount due. (*Weaver* v. *San Francisco*, 111 Cal. 319, [43 Pac. 972] ; *Montague* v. *English*, 119 Cal. 225, [51 Pac. 327].) In the Weaver case it was declared and ordered that the judgment in terms should limit satisfaction of the judgment to the income and revenues provided for the fiscal year in which the liability was incurred. In the later case of *Higgins* v. *San Diego*, 118 Cal. 524, [45 Pac. 824, 50 Pac. 670], it was finally held that such a limitation should not be inserted, but that the claimant should be given a general judgment. The court said in regard to this : "We have no desire to disturb the principle that no indebtedness or liability incurred in any one year should be paid out of the ordinary income or revenue of any future year, which principle has been declared by a long line of decisions running from the case of *San Francisco Gas Co.* v. *Brickwedel*, 62 Cal. 641, to *McBean* v. *Fresno*, 112 Cal. 159, [53 Am. St. Rep. 191, 31 L. R. A. 794, 44 Pac. 358]. Future provision might be made for the payment of a debt,

although there might be no revenues of the fiscal year in which the debt was incurred out of which it could be satisfied—as, for instance, by the adoption by the people of a proposal to pay it, or by other methods that might possibly be suggested; and a judgment that it should be paid only out of the revenues of a certain year might be held to preclude its payment in any other way. Merely putting the demand in the form of a general judgment would not in any way take it out of the general rule that the ordinary revenue of a future year cannot be applied to the payment of a liability of a previous year, as held in *Smith* v. *Broderick*, 107 Cal. 644, [48 Am. St. Rep. 167, 40 Pac. 1033]. We think, therefore, that in a case like the one at bar, there should be a general judgment in the usual form without any direction as to the method of its payment.'' This is now the settled rule. It is clear that the whole effect of this is simply that the judgment should not be drawn in such a way as to preclude enforcement in the possible event that legal provision is subsequently made for the payment thereof. What that legal provision outside of the necessary two-thirds vote by the people might be, if any, the court did not consider or intimate. But we think it must be apparent that in using the words, "the *ordinary* income or revenue of any future year," it was not intended to suggest that, consistently with the constitutional provision, the city authorities could include in their tax levy for a future year a special levy for the express purpose of paying such a claim, and that the same might be paid from the tax collected thereon. The very case approvingly cited by the court in the portion quoted above (*Smith* v. *Broderick*, 107 Cal. 644, [48 Am. St. Rep. 167, 40 Pac. 1033]), decided this very point. The court there said: "The collection in the subsequent fiscal year of a tax levied by the board of supervisors for the express purpose of paying this judgment did not give to the plaintiff any additional right to the payment of his claim, or any right to the money thus collected. The provision of the Constitution limiting the power of the municipality in incurring a liability to the income and revenue 'provided for it for such year' means that only the income and revenue that had been provided for the expenditures of the year prior to incurring the liability can be appropriated for the payment of such expenditures. To hold that any deficiency in the revenues of one year can be met from taxes collected in a subse-

quent year, under the guise that they had been collected for the express purpose of meeting such deficiency, would sweep away the entire restriction which the Constitution intended to place upon municipal extravagance." Clearly, the term "ordinary revenue" as used in the Higgins case was understood as including all revenue resulting from taxes levied by the city authorities. There is nothing in any of the decisions to suggest that any such claim can be paid from any fund other than the income and revenue of the particular fiscal year in which the indebtedness or liability was incurred, except by authorization of a two-thirds vote of the electors or constitutional amendment, and we are satisfied that the constitutional provision, as construed by the decisions we have referred to, precludes any other method. (See *Bradford* v. *San Francisco*, 112 Cal. 545, [44 Pac. 912].)

The fact that petitioner has obtained a judgment against the city for the amount of his claim in an action brought for that purpose does not avoid the application of this constitutional provision. The judgment, of course, conclusively determines the question of the validity of his claim, but it still remains that, by reason of that provision, it cannot be paid out of the revenues of a fiscal year other than the one in which the liability or indebtedness was created. In *Smith* v. *Broderick*, 107 Cal. 644, [48 Am. St. Rep. 167, 40 Pac. 1033], the claim had been reduced to a judgment, and it was squarely held, after an exhaustive discussion, that the existence of the judgment did not preclude an investigation for the purpose of ascertaining what the nature of the original cause of action was. In *Goldsmith* v. *San Francisco*, 115 Cal. 36, [46 Pac. 816], a similar situation existed, and the rule applicable was concisely and correctly stated by Mr. Justice Henshaw for the court as follows: "The reduction of the original claim to a judgment does not increase its dignity so as to authorize plaintiff to demand payment of it from any fund not subject to the primary demand." (See, also, *Higgins* v. *San Diego*, 118 Cal. 524, [45 Pac. 824, 50 Pac. 670].) If there be anything in *Johnson* v. *Supervisors of Sacramento County*, 65 Cal. 481, [4 Pac. 463], in conflict with this view, it must be deemed overruled by the later cases that we have just cited. If at the time the liability to petitioner was incurred such liability was not in excess of the revenue and income for the fiscal year, he was entitled to his judgment,

as held in numerous cases to which we have referred, not-withstanding that at the time of presentation of his claim, commencement of action, and judgment, the funds for the year had been exhausted, and the interposition of these matters as a defense would have been unavailing.

The legislative act of March 23, 1901, has been referred to. It purports to require the payment by the treasurer of any county, city, etc., of any final judgment "now existing or that may be obtained hereafter against any county, . . . city," etc. By it, the county clerk is required to file with the auditor of the city a list of judgments of record in his office against the city at least fifteen days before the day on which the tax levy is to be made, the auditor is required to examine and audit the same and certify the list to the treasurer, and the governing body of the city is required "to include in the tax levy for the next fiscal year a rate sufficient to pay all final judgments existing against" such city. The proceeding in regard to this claim was apparently in accord with the provisions of this act. But it is obvious that this act cannot be held available to petitioner for the enforcement of his demand against the revenue and income of a fiscal year subsequent to that in which the liability on which his demand is based was incurred. To hold otherwise would be to effect a violation of the constitutional provision. The Constitution is as binding upon the legislature as it is upon a city, and the legislature cannot require or authorize a city to proceed in defiance of its terms.

The conclusions we have stated as to the various points discussed are the necessary result of the settled construction of section 18, article XI, of the Constitution. This construction has now been accepted as settled beyond question for many years. We do not feel at liberty to depart from it. The fact that great hardships result in individual cases from an observance of the rule has been recognized in several of our decisions, but as has been well said, "this fact cannot afford reason for subverting the law or frittering it away."

It was held in *Lewis* v. *Widber*, 99 Cal. 412, [33 Pac. 1128], that the constitutional provision refers only "to an indebtedness or liability which one of the municipal bodies mentioned has itself incurred—that is, an indebtedness which the municipality has contracted, or a liability resulting, in whole or in part, from some act or conduct of the municipality," and that consequently it has no application to the

stated salary of a public officer fixed by state statute, that
being a matter over which the municipality has no control
and with respect to which it has no discretion. It appears
here that the printing upon which petitioner's claim is
based was the publication in his paper of a proposed free-
holders' charter, proceedings for the adoption of which by
the city of Petaluma were then pending in accord with the
provisions of section 8 of article XI of the Constitution. This
section authorized such a city at its option to adopt such a
charter and prescribed the procedure to be followed in order
to accomplish such adoption. One of the conditions was
that before the election at which the proposed charter is
submitted to the people for ratification, it must be published
for twenty days in a daily newspaper of the city. Petitioner,
having been a bidder for the contract for city printing for
the fiscal year, had been awarded the contract therefor, and
a contract had been entered into between him and the city
for such printing at specified rates. It was under this con-
tract that petitioner made the publication of the proposed
charter in his newspaper. It is claimed that under these
facts the case is within the rule declared in *Lewis* v. *Widber,
supra,* and that the constitutional provision has no applica-
tion. We think it clear that there is no force in this con-
tention. The indebtedness here is one incurred by the
municipality, and it is the immediate result of a contract by
the municipality. It would seem to be unnecessary in this
connection to do more than to refer to the cases of *Pacific
Undertakers* v. *Widber,* 113 Cal. 201, [45 Pac. 273], and
*Goldsmith* v. *San Francisco,* 115 Cal. 36, [46 Pac. 816]. It
was there held that claims of a character not distinguish-
able in any material aspect from that here involved are within
the constitutional provision. It was aptly said through Mr.
Justice McFarland in the first of these cases: ''If they are
without that provision, then it is difficult to see how indebted-
ness incurred for any services or commodities necessary for
the public welfare could be held to be within it, or how the
constitutional limitation could be kept from being frittered
entirely away.''

There is no other point made that requires notice.

The alternative writ of mandate heretofore issued is dis-
charged and the proceeding dismissed.

Shaw, J., Sloss, J., Melvin, J., and Henshaw, J., concurred.