[No. 15833. In Bank.—July 2, 1895.]

A. SMITH, APPELLANT, *v.* WILLIAM BRODERICK, AUDITOR, ETC., RESPONDENT.

MUNICIPAL CORPORATION—YEARLY INDEBTEDNESS—CONSTITUTIONAL LAW. Section 18 of article XI of the constitution, providing that "no county, city, etc. . . . . shall incur any indebtedness or liability . . . . exceeding in any year the income and revenue provided for it for such year," means that each year's income and revenue must pay each year's indebtedness and liability, and that no indebtedness or liability incurred in any one year shall be paid out of the income or revenue of any future year.

ID. — CLAIM REDUCED TO JUDGMENT—REVENUE OF SUBSEQUENT YEAR — MANDAMUS.—A claim against the city and county of San Francisco, incurred during a particular year cannot be paid out of its revenue raised for a subsequent year, notwithstanding such claim had been reduced to a judgment, and provision for its payment had been attempted to be made by the board of supervisors by a special tax levied and collected in such subsequent year, and paid into the general fund. And a writ of mandate will not lie to compel the payment of the judgment out of the moneys so collected, nor to compel the auditor to allow the same as a claim against such fund.

ID.—CONTRACTS OF MUNICIPALITIES.—If, at the time a municipality enters into an obligation, there is a limitation upon the extent to which it may enter into such obligation, or upon the extent of taxation for the payment of its liability, or upon the mode in which such payment is to be made, there is no violation of any provision of the constitution, or of

any obligation of the municipality, in insisting that the person dealing with it shall be bound by the terms of the law as they existed when he entered into his dealing with the municipality.

ID.—PAYMENT OF JUDGMENTS AGAINST SAN FRANCISCO.—The act of 1858 (Stats. 1858, p. 233), conferring power upon the board of supervisors to "order paid any final judgment against said city and county, out of the surplus fund," does not authorize the payment of such judgment out of the revenue collected for any subsequent year.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion.

*W. C. Graves, L. D. McKisick, Fox, Kellogg & Gray, Mullany, Grant & Cushing,* and *E. S. Heller,* for Appellant.

*Stanly, Hayes, McEnerney & Bradley,* for Respondent.

HARRISON, J.—The plaintiff is the assignee of the claims of sundry individuals for merchandise sold and delivered by them to the city and county of San Francisco, and for labor performed by them for said municipality prior to June 9, 1893, and on that day he commenced an action against the city and county to recover a judgment for the amount of said claims. Prior to the commencement of the action the board of supervisors had adopted a resolution authorizing the city and county attorney to allow judgment to be taken and entered against the city and county in all cases in the litigation of claims against it for supplies, material, and labor, "where such claims are or have been examined or corrected by the finance committee of this board through the expert of said committee," for the amounts approved by said committee. After the plaintiff had commenced his action the expert of the finance committee reported to that body that he had examined the claims, and that the amount named in the plaintiff's suit was the correct amount due him. Thereupon the finance committee directed the city and county attorney to allow judgment to be taken against the city and county for the amount

claimed by the plaintiff. June 16, 1893, after the summons issued upon the complaint in said action had been served upon the city and county, a stipulation entered into between the city and county attorney and the attorney for the plaintiff was filed in said action, in which was recited the foregoing resolution of the supervisors, and allowing judgment to be entered in favor of the plaintiff, and against the defendant therein, for the amount of his claim; and, thereupon, judgment was entered in accordance with the stipulation June 19, 1893. July 5, 1893, the plaintiff presented to the board of supervisors his demand for the amount of the judgment, and the same was duly allowed and approved, and an authorization for its payment, in the form of a resolution, was adopted by the board of supervisors, and approved by the mayor July 26th. The authorization is in the following terms: " *Resolved,* That an expenditure of $3,548.03 be, and the same is hereby, authorized to be made out of the general fund, in payment to A. Smith, assignee, being for goods furnished and services rendered the city and county of San Francisco, as hereinafter stated, as per judgment rendered in the superior court in case No. 41266, and as certified by the city and county attorney, to wit [reciting the claims of the different assignors of the plaintiff]." Thereupon the plaintiff presented this authorization to the defendant herein, who was and still is the auditor of said city and county, for his approval and allowance. The defendant refused to approve and allow the same, and the plaintiff made application to the superior court for a writ of mandate commanding him to approve and allow the demand. The defendant, in his answer to the application, set forth the foregoing facts, and also alleged that the demands and claims of the plaintiff and of his assigns were for liabilities incurred by the city and county for and during the fiscal year ending June 30, 1893; that only two of the claims of his assignors— amounting to $117.89—were payable out of the general fund, and that the others were payable out of the street

department fund; that on the eighth day of June, 1893, there had been allowed and audited, for the debts and liabilities of the city and county incurred during the fiscal year ending June 30, 1893, demands against the general fund, amounting to more than the moneys paid or payable into said fund; that on said eighth day of June, 1893, there was a deficiency in said general fund, which was represented by allowed and registered demands, for the payment of which no money had been provided; that said deficiency still existed, and that there had not been since the eighth day of June, 1893, was not then, and would not at any time be, any money of the income or revenue of said fiscal year in the treasury applicable to the payment of the two demands payable out of the general fund; that on the first day of July, 1893, there was in the treasury, in the street department fund, for the fiscal year ending June 30, 1893, a surplus amounting to $1,687.08, out of which there had since been paid, upon demands for liabilities incurred in said fiscal year, the sum of $535.75, leaving unpaid the sum of $1,156.33; that there has not been since said first day of July, and there never will be, in the street department fund, for the fiscal year ending June 30, 1893, any sum of money applicable to the payment of the claims and demands of plaintiff's assignors which are chargeable against, and payable out of, the street department fund any greater sum or amount than said sum of $1,687.08; that the deficiency in the general fund for the fiscal year ending June 30, 1893, amounts to more than the sum of $100,000, and that there was not at the end of said fiscal year, nor has there been at any time since, nor will there be, nor has there ever been, sufficient money in the treasury of the said city and county to pay the demands incurred in said fiscal year ending June 30, 1893, and there was not on that day, nor has there at any time since been, nor will there ever be, a surplus fund for said fiscal year. The court found that the foregoing matters and facts alleged in the answer of the defendant were true as

therein alleged, and further found that on June 26, 1893, the board of supervisors made provision for the payment and satisfaction of the judgment recovered by the plaintiff, by levying a tax therefor, and ordering the same to be collected and set apart for the payment and satisfaction of said judgment, and that the money so levied is now in and a part of the general fund of said city and county. Upon these facts the court denied the application of the plaintiff, from which he has appealed.

Section 18 of article XI of the constitution is as follows: " No county, city, town, township, board of education, or school district shall incur any indebtedness or liability in any manner, or for any purpose exceeding in any year the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose." In *San Francisco Gas Co.* v. *Brickwedel*, 62 Cal. 641, it was held by this court that the framers of the constitution meant by this section " that no such indebtedness or liability should be incurred [except in the manner stated] exceeding in any year the income and revenue actually received by such county, city, town, township, board of education, or school district. In other words, that each year's income and revenue must pay each year's indebtedness and liability, and that no indebtedness or liability incurred in any one year shall be paid out of the income or revenue of any future year." The same principle was repeated in *Shaw* v. *Statler*, 74 Cal. 258, and *Schwartz* v. *Wilson*, 75 Cal. 504. (See also *Mayrhofer* v. *Board of Education*, 89 Cal. 114; 23 Am. St. Rep. 451.) To the argument of the appellant that this construction of the section is injurious to the city and county, and a hardship upon those who in good faith contract with it, we may also quote from the language of the court in the Brickwedel case: " We have neither the right nor the disposition by judicial interpretation to take away the wholesome restriction upon municipalities thus imposed by the

constitution.  Of course, in giving effect to this radical change from the pre-existing condition of things, it will not be strange if some shall be found to suffer, but it must be remembered that all are presumed to know the law, and that whoever deals with a municipality is bound to know the extent of its powers.  Those who contract with it, or furnish it supplies, do so with reference to the law, and must see that that limit is not exceeded.  With proper care on their part, and on the part of the representatives of the municipality, there is no danger of loss." (See, also, *Sutro* v. *Pettit*, 74 Cal. 337; 5 Am. St. Rep. 442; *McBean* v. *San Bernardino*, 96 Cal. 187; *Von Schmidt* v. *Widber*, 105 Cal. 151.)

There is ample power under the statutes which constitute the charter of San Francisco to provide for all the contingencies that are suggested in the arguments on behalf of appellant.  By the seventy-first section of the Consolidation Act, as amended in 1866 (Stats. 1865–66, p. 436), the supervisors are authorized to levy a tax that will raise such an amount of money "as the said board may deem sufficient to provide for the payment of all demands upon the treasury authorized by law to be paid out of the same."  The limitation upon this power, viz., $2.35 on the $100, is conceded to be far beyond any possible necessities of the municipality. The assessment-roll of property subject to taxation is made prior to the levy of this tax, and, in determining the amount of the tax to be levied, the supervisors, aided by the experience of the municipality in former years, and by the estimates of the several departments of the city, are enabled to exercise a judicious consideration of the expenditures likely to be incurred during the year, and to make such provision for unforeseen emergencies as ordinary prudence would suggest.  As the amount of expenditures cannot in the nature of things be determined with accuracy, ordinary prudence would dictate, in view of the foregoing provision of the constitution, that the tax levy should be large enough to meet any unforeseen demand, and to enable the mu-

nicipality to discharge all of its obligations. If the amount of money so provided is not needed for the expenditures of the year it can be carried forward into the next fiscal year; whereas, if the revenue thus provided is not sufficient to meet the expenditures, there is no provision for meeting the deficiency, except by the " assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose."

The right of the appellant to the relief he seeks is not affected by reason of his demand having been reduced to a judgment. The foregoing provision of the constitution cannot be evaded by a consent on the part of the officers of the municipality that a judgment may be entered against the municipality upon an open demand which constitutes no liability against the city. The effect of the judgment was only to make definite and of record a claim which previously was open to controversy, and rested in parol, and to convert a disputed into an audited claim. (*Sharp* v. *Contra Costa County*, 34 Cal. 291.) While a judgment is sometimes said to be the highest evidence of an obligation, it does not, for that reason, in all cases, foreclose an investigation into the nature of the obligation as well as the liability which it imposes. In *Clark* v. *Rowling*, 3 N. Y. 216, 53 Am. Dec. 290, it was held by the court of appeals of that state that in an action to enforce a judgment it was competent for the defendant to go behind the judgment and show that it was rendered upon a cause of action from which he had been discharged in bankruptcy, although the discharge was not rendered until after the rendition of the judgment, and a suit upon the obligation was pending when the petition in bankruptcy was filed; that the judgment, instead of being a new debt which did not exist at the time the petition was filed, was merely the old debt in a new form, and that, for the purpose of protecting the defendant, the court would look behind the judgment and see upon what it was founded. The same rule was afterward laid down in this state in *Imlay*

v. *Carpentier,* 14 Cal. 173, where the judgment debtor
sought in equity to set aside a judgment that had been
rendered against him under similar circumstances.    In
*Betts* v. *Bagley,* 12 Pick. 580, where the same question
was under discussion by the supreme court of Massa-
chusetts, Chief Justice Shaw said: "Although a judg-
ment to some purposes is considered as a merger of
the former promise, and as constituting a new cause of
action, yet, when essential rights of parties are influ-
enced by the nature of the original contract, the court
will look into the judgment for the purpose of ascertain-
ing what the nature of such original cause of action
was." (See, also, *Wyman* v. *Mitchell,* 1 Cow. 316; *Evans*
v. *Sprigg,* 2 Md. 457; *McDonald* v. *Davis,* 105 N. Y. 513;
*Commissioners etc.* v. *Loague,* 129 U. S. 493; *Morley* v.
*Lake Shore Ry. Co.,* 146 U. S. 169.)   In the *United States*
v. *County of Macon,* 99 U. S. 582, a judgment had been
rendered in favor of the relator against the county for
the amount of certain coupons upon bonds that had
been issued by the county.   In a proceeding to compel
the county to levy a tax for the purpose of paying this
judgment, it was shown that the statute under which
the subscription to the bonds was made contained a
limitation upon the amount of tax that might be levied
by the county to pay the same, and it was held by
the court that, although a judgment had been rendered
upon the coupons, the judgment creditor was not enti-
tled to a writ of mandate directing the levy of a tax for
the payment of the judgment, saying: "We have not
been referred to any statute which gives a judgment
creditor any right to a levy of taxes which he did not
have before the judgment.   The judgment has the effect
of a judicial determination of the validity of his demand,
and of the amount that is due, but it gives him no new
rights in respect to the means of payment."   The same
principle was again asserted in *Ralls County Court* v.
*United States,* 105 U. S. 733, although it was held inap-
plicable in that case, as it was in *United States* v. *New
Orleans,* 98 U. S. 381, for the reason that at the time

when the bonds upon whose coupons the judgment had been rendered were issued, there was no limitation upon the power of taxation, and that the payment of the bonds as they matured, or of a judgment obtained thereon, could not be avoided by any subsequent legislation, inasmuch as such legislation would be in contravention of that provision of the constitution forbidding the impairing of the obligation of a contract. This distinction is referred to in *Louisiana* v. *Mayor of New Orleans*, 109 U. S. 285. In that case the relators had recovered a judgment against the city of New Orleans for damage done to their property by a mob in the year 1873. By a statute of the state which was in force when the damage was done the city was rendered liable therefor, and, at the time when the judgment was rendered, as well as when the damage was done, the city was authorized to levy taxes to an amount which would be sufficient to satisfy the judgment. Subsequently, in the year 1879, a provision was made in the constitution of the state restricting the power of the city in levying taxes, by which the relators were prevented from collecting their judgments, as the funds authorized to be levied were exhausted by the current expenses of the city. Thereupon they applied for a mandamus to compel a levy of taxes by the city to meet their judgments at a rate which was permitted when the damage was done for which the judgments were rendered. The supreme court of the United States held that they were not entitled to the writ; that the judgments held by the relators did not rest upon contract in any respect, and that the obligation of the city had no further element of contract in it because merged in the judgment than it had previously possessed, and that the limitation in the constitution upon the extent to which the city could exercise the power of taxation did not infringe the provision forbidding the impairment of the obligation of a contract. Commenting upon the inapplicability of this provision of the constitution the court said: " The cases in which we have held that the taxing power of a municipality con-

tinues notwithstanding a legislative act of limitation or-repeal, are founded upon contracts, and decisions in them do not rest upon the principle that the party affected in the enforcement of his contract rights has been thereby deprived of any property, but upon the principle that the remedies for the enforcement of his contracts existing when they were made, have been by such legislation impaired. The usual mode in which municipal bodies meet their pecuniary contracts is by taxation, and when, upon the faith that such taxation will be levied, contracts have been made, the constitutional inhibition has been held to restrain the state from repealing or diminishing the power of the corporation, so as to deprive the holder of the contract of all adequate and efficacious remedy." In *United States* v. *County of Macon, supra,* the court said: "Thus, while the debt was authorized, the power of taxation for its payment was limited by the act itself and the general statutes in force at the time, to the special tax designated in the act, and such other taxes applicable to the subject as then were or might thereafter by general or special acts be permitted. No contract has been impaired by taking away a power which was in force when the bonds were issued. The general power of taxation to pay county debts is as ample now as it was when the railroad company was incorporated, and the debt incurred. The difficulty lies in the want of original power." Upon these principles the same provision of the constitution has no application here. The contracts forming the basis of the plaintiff's judgment were not entered into upon the faith that any tax would be levied with which to meet them, but with full knowledge that the municipality was prevented from paying them out of any fund other than the revenue that had already been provided for the fiscal year ending June 30, 1893. None of the remedies which then existed for the enforcement of these contracts have been in any respect impaired. If, at the time of entering into the obligation, there is a limitation upon the extent to which a

municipality may enter into such obligation, or upon the extent of taxation for the payment of its liability, or upon the mode in which such payment is to be made, there is no violation of any provision of the constitution, or of any obligation of the municipality, in insisting that the person dealing with it shall be bound by the terms of the law, as they existed when he entered into his dealings with the municipality. The same reasons which would justify the refusal of a writ of mandate to enforce the collection of a judgment by the levy of a tax which is forbidden by law, require the refusal of the writ when sought to enforce a judgment by applying thereto, in contravention of an express provision in the constitution, moneys that have already been collected, and are in the treasury.

The act of 1858 (Stats. 1858, p. 233), invoked on behalf of the appellant, is not available to him in the present case. That act conferred power upon the board of supervisors to " order paid any final judgment against said city and county, *out of the surplus fund;* whereas the authorization in the present case is that the judgment be paid out of the general fund. The surplus fund is provided for in section 76 of the Consolidation Act, and " consists of any moneys belonging to the general fund, remaining in the treasury after the satisfaction of all demands due and payable, which are specified in the first fourteen subdivisions in section 95."

The collection in the subsequent fiscal year of a tax levied by the board of supervisors for the express purpose of paying this judgment, did not give to the plaintiff any additional right to the payment of his claim, or any right to the money thus collected. The provision of the constitution limiting the power of the municipality in incurring a liability to the income and revenue "provided for it for such year," means that only the income and revenue that had been provided for the expenditures of the year prior to incurring the liability can be appropriated for the payment of such expenditures. To hold that any deficiency in

the revenues of one year can be met from taxes collected in a subsequent year, under the guise that they had been collected for the express purpose of meeting such deficiency, would sweep away the entire restriction which the constitution intended to place upon municipal extravagance.

Unless it was the duty of the auditor to allow the claim of the appellant, the writ of mandate cannot be allowed. (*Von Schmidt* v. *Widber, supra.*) By section 87 of the Consolidation Act that officer is required "to be constantly acquainted with the exact condition of the treasury, and every lawful demand upon it." By section 84 of the same act, whenever a claim against the treasury is presented to him for auditing, he must "satisfy himself whether the money is legally due and remains unpaid, and whether the payment thereof from the treasury of the city and county is authorized by law, and out of what fund." Section 88 declares that, if he allow any demand on the treasury not authorized by the act, he shall be liable to the city and county individually, and on his official bond, for the amount so illegally allowed. Inasmuch, therefore, as it appeared from the facts found by the court that the claim of the appellant was not a legal demand upon the treasury, which he had the right to have paid out of funds therein at the time he presented the same to the auditor, the auditor was justified in refusing its allowance.

The judgment is affirmed.

McFARLAND, J., GAROUTTE, J., VAN FLEET, J., HENSHAW, J., and TEMPLE, J., concurred.