[No. 12477.   Department Two.   November 10, 1915.]

THE STATE OF WASHINGTON, *on the Relation of V. I. Bradway, Appellant*, v. J. P. DeMATTOS, *as Mayor of the City of Bellingham, et al., Respondents*.[1]

DISMISSAL AND NONSUIT—RIGHT TO. In the absence of a set-off or counterclaim, plaintiff has a right to take a voluntary nonsuit.

APPEAL—REVIEW—WAIVER OF ERROR. Error in refusing plaintiff's request, at the opening of the trial, to dismiss certain of his causes of action without prejudice, is waived where he went to trial upon all of them and did not take a voluntary nonsuit.

MUNICIPAL CORPORATIONS—OFFICERS—POWERS — CONFESSING JUDGMENT—COMPROMISE AND SETTLEMENT—VALIDITY. Although, in an action against a city growing out of local assessment warrants, there are mooted questions as to the city's liability upon several issues, the city officials, in effecting a compromise, have no power to use the disputed points as a consideration for the assumption by the city of seventy-five per cent of the face of other local assessment warrants concerning which there could be no *bona fide* claim that the city was or might be generally liable, and such a compromise is void as including an element not a legal subject of compromise.

JUDGMENT—VALIDITY—CONSTRUCTIVE FRAUD. A consent judgment against a city based upon an illegal compromise which included claims against the city which were not a legal subject of compromise, is constructively fraudulent, and is not saved by the inclusion of valid claims; since a judgment cannot be valid in part and void in part, but must be valid or void in whole.

JUDGMENT—BY CONSENT—RES JUDICATA—DIRECT ATTACK—FRAUD. An answer in mandamus to enforce a consent judgment against a city, is a direct and not a collateral attack upon the judgment, and shows that the judgment is not *res judicata*, but is void as based

[1]Reported in 152 Pac. 721.

upon a compromise tainted with fraud, where it alleged that, as a recognized consideration for the compromise on which the judgment was based, the city officials assumed payment of claims that were neither a legal nor moral liability of the city, knowing such fact at the time of the settlement.

JUDGMENT—BY CONSENT—RES JUDICATA—MUNICIPAL CORPORATIONS —AUTHORITY. A consent judgment entered against a city is not *res judicata* as to the authority or power of the city officials to consent to the judgment.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered September 16, 1914, upon findings in favor of the defendants, in an action to compel the levy of a tax to pay certain indebtedness fund warrants, tried to the court. Affirmed.

*George Livesey* and *George Downer*, for appellant.

*Dan F. North* and *John A. Kellogg*, for respondents.

ELLIS, J.—This is an action in mandamus to compel the defendants, as officers of the city of Bellingham, to levy a tax to pay certain indebtedness fund warrants issued against the city of Fairhaven. In his amended complaint filed May 22, 1913, the plaintiff sets up four causes of action.

In the first, he alleges that Bellingham was formed by the consolidation of Whatcom and Fairhaven, in 1904; that he is the owner of eighteen warrants aggregating $4,681.18, issued by the city of Fairhaven to one Frye, each dated November 20, 1900, and bearing interest at the rate of six per cent per annum. Copies of the warrants are set out in the complaint. Each recites that it was issued in partial satisfaction of a judgment in favor of one Law against the city of Fairhaven.

For a second cause of action, it is alleged that the plaintiff is the owner of three warrants aggregating $661.90, issued by the city of Fairhaven on July 10, 1900, in satisfaction of a judgment against the city of Fairhaven in favor of one Waldron.

For a third cause of action, it is alleged that the plaintiff is the owner of six warrants issued by the city of Fairhaven on September 6, 1900, to one Whitehouse, aggregating $2,601.08, in partial satisfaction of a judgment in favor of the Geneva National Bank against the city of Fairhaven.

For a fourth cause of action, it is alleged that the plaintiff is the owner of two warrants for $500 each, issued by the city of Fairhaven on January 11, 1901, in partial satisfaction of a judgment in favor of the Slater Trust Company against the city of Fairhaven.

In each cause of action, it is alleged that the warrants respectively were, on the date of their issuance, presented to the city treasurer for payment, and indorsed not paid for want of funds, and bear interest from that date at the rate of six per cent per annum; that there is no money in the indebtedness fund; that the warrants are unpaid; that the defendants have refused to levy a tax to pay them, and that the plaintiff has no plain, speedy and adequate remedy at law.

In the answer it is alleged that the city of Fairhaven was a city of the third class, organized in 1890; that in 1904 it became a part of the consolidated city of Bellingham; that, during the years 1890, 1891 and 1892, the city of Fairhaven improved many of its streets, by contracts which provided that the work should be paid for by street grade warrants on funds to be provided by local assessment of the property benefited in various local improvement districts; that in 1893 there was a great decrease in real estate values and owners failed to pay taxes and assessments; that the holders of warrants against local improvement district funds knew of this condition, but took no steps to compel the foreclosure of special assessment liens; that on August 6, 1900, the city council of Fairhaven passed a resolution that the city issue to all holders of street grade warrants indebtedness fund warrants for seventy-five per cent of the face of such street grade warrants in lieu of such warrants, and that the city treasurer be authorized to communicate such of-

fer to all holders of such warrants; that the plaintiffs in the various actions referred to in the complaint, and others, commenced actions against the city of Fairhaven to recover upon street grade warrants; that the indebtedness fund warrants set up in the first cause of action were issued in partial satisfaction of a purported judgment for $14,693, in the suit of Law against the city of Fairhaven, which suit was to recover on warrants issued by that city against several local improvement district funds; that, in his complaint in that action, Law alleged that the city owed the district funds for the improvement of street intersections and for warrants wrongfully paid out of the order of their issuance, by reason whereof there was no money in the fund with which to pay his warrants; that in that suit the city of Fairhaven answered, admitting the allegations of the complaint and consenting to the entry of the judgment.

In the answer here it is also alleged, in effect, that the judgment was collusively entered, in that the officers of the city of Fairhaven were not authorized to consent to the entry of judgment; that they knew that the city had· a complete defense, in that the statute of limitations had run against the causes of action; that the city was at that time in debt in excess of the constitutional limit of indebtedness, and that many of the material allegations of Law's complaint were known, or ought to have been known to the officers so consenting to the judgment, to be wholly untrue; and that the acts of the officers of the city in consenting to judgment and in issuing indebtedness fund warrants were illegal and without authority. The answers to the other causes of action were in all material particulars the same as that to the first cause of action, save that it is alleged, in addition in the answer to the second cause of action, that no judgment was ever entered in the Waldron suit.

The plaintiff, after the filing of this answer, moved to dismiss without prejudice as to all of his causes of action save the third. The motion was denied. The case was tried to the

court without a jury. It was conceded that there were no funds with which to pay the indebtedness fund warrants.

The evidence showed that, in 1897, the Geneva National Bank brought an action against the city of Fairhaven on street grade warrants issued against various street grade districts; that this suit was not further prosecuted until 1900; that the matter was discussed by the then city attorney and councilmen of Fairhaven; that it was found that the property in the improvement district had greatly depreciated and much of it had been sold for delinquent taxes; that the council desired to dispose of all of the street grade indebtedness and finally, in 1900, a compromise was effected whereby the city was to assume as a general liability seventy-five per cent of the face of all special assessment street grade warrants, payment to be made with indebtedness fund warrants bearing interest from their date at the rate of six per cent per annum. The plan was to settle with all holders of street grade warrants on this basis.

It is admitted that the judgments entered on this basis in the various actions set up in the plaintiff's complaint herein, and, also, in other actions, aggregated approximately $69,000. The court found that, at the time of the entry of the various judgments in partial payment of which the indebtedness fund warrants here involved were issued, the city of Fairhaven had paid all the assessments for street intersections due from it to all of the various improvement districts involved save four, and that to these at that time it owed for such street intersections and for sums assessed as general benefits an amount approximating $25,000, exclusive of interest. This finding was not excepted to. We therefore accept it as true.

There is no definite evidence as to the amount of warrants drawn on the various special assessment funds which had been paid out of their order of issuance, nor is there any evidence as to when any warrants had been paid out of such order. There is nothing to show that any such warrants

had been paid subsequent to the act of 1893 requiring im-
provement warrants to be paid in their order of issuance.
There is, however, evidence that some warrants, the amount
not being shown, were paid out of the order of their presen-
tation, contrary to an ordinance of the city of Fairhaven in
force at the time the assessment warrants were issued.   The
evidence shows that the investigation on the part of the city
officials, upon which the compromise leading to the issuance
of the indebtedness fund warrants here involved was based,
was nothing more than a rough estimate that the refunding
of all outstanding local assessment warrants on the basis of
seventy-five per cent of their face would charge the city gen-
erally with very little more than it might possibly be com-
pelled to pay if the holders of all such warrants sued the
city.   The evidence, however, fails to show that there was any
very substantial basis for such a conclusion.   It fairly ap-
pears that, at the time of the entry of the consent judgments,
the indebtedness of the city was far beyond the constitutional
debt limit.

The trial court was of the opinion that, inasmuch as the
city officials of the city of Fairhaven, in the agreement lead-
ing up to the compromise, and in the resolution of August 6,
1900, and in the judgments entered by consent in pursuance
thereof, had assumed the payment of seventy-five per cent of
the face of a large amount of street grade warrants upon
which it owed nothing and for which it could not be legally
bound, the warrants were void.   Upon lengthy findings of
fact, the court concluded that the action of the officers of
the city of Fairhaven in consenting to the entry of the judg-
ments was in law a fraud upon the taxpayers of the city of
Fairhaven; that the judgments were illegal and void, and
that the indebtedness fund warrants issued in payment there-
of were unenforcible.   Judgment was entered denying the
writ of mandate.   The plaintiff appealed.

Preliminary to the main discussion, the appellant claims
that the court erred in refusing to permit him to dismiss as

to the first, second and fourth causes of action. We find it unnecessary to determine whether this was error or not. The appellant went to trial upon all of his causes of action, introduced evidence in support of all of them, and at no time took, or asked leave to take, a voluntary nonsuit as to any of them. No set-off or counterclaim having been interposed, he would have had a clear right to take a voluntary nonsuit. *Fisk v. Tacoma Smelting Co.*, 49 Wash. 514, 95 Pac. 1082; *McPherson v. Seattle Elec. Co.*, 53 Wash. 358, 101 Pac. 1084; *Budlong v. Budlong*, 48 Wash. 645, 94 Pac. 478; *Averill Mach. Co. v. Allbritton*, 51 Wash. 30, 97 Pac. 1082. Such a course would have avoided whatever injury was inflicted by the court's refusal of his application to dismiss. The failure to take a nonsuit was a waiver of the error now claimed.

The answers to two questions must be determinative of this case upon its merits. (1) Were the several judgments, in partial payment of which the warrants here in question were issued, illegal and void because of the inclusion therein, and in the agreement upon which they were based, of street grade warrants for which the city officials had no power to assume on behalf of the city a general liability. (2) Can we go behind the judgments themselves to determine the facts which would avoid the judgments, or are the judgments *res judicata* as to every defense which might have been raised in the original suits against the city of Fairhaven?

I. The fact that the city owed the special funds in four of the districts sums for the improvement of street intersections and one of the funds a sum for general benefits assumed by the city, which were proper charges against the city and payment of which into the appropriate special fund might have been enforced by mandamus, and the further fact that in these and other districts some of the warrants drawn on the special fund had been paid out of the order of their issuance, thus making a mooted question as to the city's liability therefor, were the only subjects upon which there could

have been a real dispute at the time of the consent judgments. A compromise including these, and only these, and a consent judgment based on these, it may be assumed, would have been valid and *res judicata* of every defense which the city might have interposed to such suits, even including that of the exceeding of the constitutional debt limit. We shall so assume without so deciding. But a compromise which used these as a consideration for the assumption by the city of seventy-five per cent of the face of other local assessment warrants concerning which there could be no *bona fide* claim whatever that the city was or might be generally liable, was clearly beyond the power of the city officials to make. The judgments founded on such a compromise, therefore, included an illegal element known to be such when their entry was consented to. This knowledge must be assumed from the decisions of this court announced prior to the settlement here in question. These decisions first implied that special assessments could not be made a general liability against a city by its failure to provide and collect the special fund (*German-American Sav. Bank v. Spokane*, 17 Wash. 315, 49 Pac. 542, 38 L. R. A. 259, decided July 9, 1897) and shortly afterwards distinctly and repeatedly held that, in such a case, the city did not become liable. *Wilson v. Aberdeen*, 19 Wash. 89, 52 Pac. 524, decided in March, 1898; *Rhode Island Mtg. & Trust Co. v. Spokane*, 19 Wash. 616, 53 Pac. 1104, decided in July, 1898; *Northwestern Lumber Co. v. Aberdeen*, 20 Wash. 102, 54 Pac. 935, decided in October, 1898. The city should have paid into the appropriate funds all moneys due to the funds respectively for street intersections and into the fund of which it had assumed a part because of general benefits the amount so assumed, and should have refunded to the appropriate district funds all moneys misappropriated from such funds respectively, so that all of these sums might be applied on the appropriate unpaid grade warrants in the order of their issuance. These payments probably could have been compelled. That was the

full measure and limit of the relief which could have been legally granted in the original suits in which the consent judgments were entered. The city could not have been compelled to pay any other warrants or any other sums. *Northwestern Lumber Co. v. Aberdeen,* 22 Wash. 404, 60 Pac. 1115.

Unless precluded by the principle of *res judicata* from looking beyond the face of the judgments, we are constrained to hold that these consent judgments were void because the consideration of the compromise was inextricably mixed with an illegal element, in that, as a part of the compromise, the city officials assumed on behalf of the city payments which they had no power to assume, by including in the compromise warrants upon which there could be no *bona fide* claim that the city was liable, hence not a legal subject of compromise. *State ex rel. American Freehold-Land Mtg. Co. v. Tanner,* 45 Wash. 348, 88 Pac. 321.

The only distinction between this case and the *Tanner* case is found in the fact that here some of the elements of the compromise were meritorious, while in that case none were. That difference, however, cannot be permitted to save a consent judgment any part of which is tainted with an illegal consideration. To hold that the circumstance that some of the claims included in the compromise were actually or possibly valid claims against the city would save a compromise which included claims unquestionably invalid, would open wide the door to fraud. It would furnish a convenient method for collusively fastening upon the city, as a general liability, regardless of the debt limit or any other legal obstacle, the cost of special improvements in almost any case by merely including in the compromise some meritorious claim and consenting to judgment for the whole.

"A judgment cannot be void in part and good in part; it must be either valid or void in whole; and where fraud attaches to a part only of a judgment the whole is a nullity." *Hutchins v. Lockett,* 39 Tex. 166.

See, also, *Richards & Finney v. Walton*, 12 Johns (N. Y.) 434; *Williams v. Delaware & Hudson Co.*, 156 App. Div. 695, 141 N. Y. Supp. 606; *Meyer v. Kuhn*, 65 Fed. 705.

The court found, and so do we, that the city officials in making the settlement were actuated by no bad motive. But the court also found, and so do we, that they so far exceeded their powers as to taint the settlement and judgments with constructive fraud. This, though less reprehensible, can be no less fatal than actual fraud.

II. The appellant strenuously insists that, when it is sought to enforce a consent judgment, the court can look no further than the allegations of the complaint in the action in which it is entered, and if it states any cause of action, the inquiry is concluded; that a consent judgment, like other judgments, is *res judicata* of everything which might have been litigated in the action had it been contested. That might be true where no fraud, either in fact or in law, is alleged in the answer as entering into the settlement on which the consent judgment was founded. Such, at least, is the rule touching mere default judgments founded on no agreement to suffer default or other actual consent (*Harshman v. Knox County*, 122 U. S. 306), or where on a trial a defense is not made which might have been made (*Smith v. Ormsby*, 20 Wash. 396, 55 Pac. 570, 72 Am. St. 110). But where, as here, such fraud is alleged as a defense against the enforcement of the judgment, that defense is equivalent to a direct attack on the judgment, and as such throws the whole settlement open to inquiry, and when, as here, it appears that there was an element entering as a recognized consideration into the settlement which could not on any sort of complaint have been a valid element in a cause of action because neither a legal nor a moral liability on the city's part, and where it further appears that this fact must have been known at the time of compromise, as in this case it must have been by reason of the prior decisions of this court, then the settlement is tainted with fraud in law and the judgment by con-

sent thereon is void.  Such is the necessary result of the hold-
ing of this court in *State ex rel. American Freehold-Land
Mtg. Co. v. Tanner, supra.*  The appellant concedes that
such would be the result if actual fraud be proved by clear
and convincing evidence, but we know of no rule which marks
any difference in this regard between actual fraud and con-
structive fraud.

The appellant seeks to distinguish the *Tanner* case from
the case here on the ground that the judgment there sought
to be enforced was based upon a complaint which stated no
cause of action.  The decision of this court holding the judg-
ment void was, however, not based upon that ground at all,
but squarely and distinctly upon the ground that the default
judgment was procured by an agreement to allow judgment
to go by default amounting to a legal fraud.  That agree-
ment did not appear in the pleadings in the suit on which
the original judgment was rendered.  It was set up in the
answer in the mandamus suit, and the truth of that answer
was admitted in open court at the trial of the mandamus suit.
It is true, as stated by the appellant here, that, in the trial
of the mandamus proceeding in the *Tanner* case, no evidence
was taken, but it is also true, and the decision itself so shows,
that the only reason evidence was not taken was because the
admission in open court of the things set up in the answer
dispensed with the necessity of other proof.  The plain sub-
stance of the decision is that, when, in an action for mandamus
to enforce a consent judgment, fraud and collusion in the
agreement of consent is set up as equitable defense, the an-
swer is to be treated as a direct and not a collateral attack
on the judgment, thus permitting a full inquiry into the
whole transaction.  This is clear from the following language
touching the claim that the original judgment was *res judi-
cata:*

"The other assignments of error are discussed together.
They are that the court erred in overruling the appellant's
demurrer to the respondent's answer, and also in rendering

judgment against appellant holding the warrants void.  It
is argued that the superior court which rendered the judg-
ments in the suits upon the grade warrants had jurisdiction
of the parties and of the subject-matter, and had, therefore,
power to render the judgments.  It is conceded, however, that
a court of equity has the power, under an original bill filed
as a direct attack for that purpose, to impeach a judgment
which has been obtained by fraud or collusion.  It is also
conceded that, under our code practice, equitable defenses
may be pleaded in an action at law, and that the answer set-
ting up such a defense has the same force as a bill in equity.
It is, however, argued that the answer in this case is a col-
lateral, and not a direct, attack upon the judgments in the
grade warrant suits, for the reason, that the answer is lack-
ing in certain necessary allegations for a bill in equity, viz.,
that it shows that respondents failed to use the legal remedies
at their disposal, and also that they are barred by laches.

"The answer shows that some of the judgments were ren-
dered as early as May, 1898, and that in January, 1899, the
city council refused to recognize the validity of the judg-
ments and of the warrants issued in satisfaction thereof.  But
since it does not appear from the answer that the city moved
to vacate the judgments in the manner and within the year
provided by statute, it is urged that it has failed to avail
itself of its legal remedy, and that it cannot now maintain
an equitable action as an attack upon the judgments. . . .
But we deem it immaterial to pursue a discussion here as to
the right to maintain original suits in equity after the ex-
piration of the year, for the reason that the matters alleged
here are set up as a defense, and not in support of an orig-
inal action.  Is an equitable defense to an action barred by
the statute of limitations?  It would seem that so long as a
cause of action survives, the equitable defense thereto should
survive also."

The opinion then quotes at length and with approval from
*McColgan v. Muirland,* 2 Cal. App. 6, 82 Pac. 1113, includ-
ing the following:

"We are of opinion that the statute does not apply to fraud
relied upon purely as a defense where no affirmative relief is
sought by the defendant.  If the judgment was procured by
fraud and without consideration, a court of equity will grant

relief. It will grant relief by allowing the facts which will vitiate the judgment to be alleged and proven as a defense to it, and this as long as the judgment is the foundation for the suit. So long as the plaintiff is allowed to come into court, seeking to enforce such judgment, the defendant may allege and prove the fraud as a defense. The defendants' affirmative action for relief on the ground of fraud is barred, but the judgment does not become, by age alone, immune from the infirmities under which it originated."

There is nothing in the decision in the *Tanner* case to indicate that, had the complaint on which the judgment was founded stated a complete cause of action, the judgment would have been held conclusive. The whole opinion indicates just the contrary.

As sustaining the rule that, in an action to enforce a judgment, an answer alleging fraud or collusion in its procurement will be treated as a direct attack opening the whole matter to inquiry and not narrowly as a mere collateral attack, see, also, *Ft. Jefferson Imp. Co. v. Green*, 112 Ky. 85, 65 S. W. 161; 2 Pomeroy, Equity Jurisprudence (2d ed.), § 919.

Authority is not wanting to the effect that judgments entered against municipalities on consent of the municipal authorities are not *res judicata* as to the authority or power to consent, and that such want of power or authority to consent may always be shown to avoid the judgment whenever, as here, the record shows that it was entered on consent.

"Consent judgments are in effect merely contracts of parties, acknowledged in open court and ordered to be recorded. As such they bind the parties themselves thereto as fully as other judgments, but when parties act in a representative capacity such judgments do not bind the *cestuis que trustent* unless the trustees had authority to act, and when (as in the present case) the parties to the action, the town authorities, had, as appears above, no authority to issue the bonds, their honest belief, however great, that they had such power would not authorize them to acquire such power, and bind the town

by consenting to a judgment. It is not a question of fraudulent judgment but a void judgment for want of authority to consent to a decree to bind principals—the taxpayers—for whom they had no authority to create an indebtedness by consenting to a judgment, any more than they would have had by issuing bonds. If authorized to create the indebtedness, either the bonds or the consent judgment would be equally an estoppel, but as they had no such authority neither bonds nor judgment is binding on the taxpayers." *Union Bank of Richmond v. Oxford Com'rs,* 119 N. C. 214, 25 S. E. 966, 34 L. R. A. 487.

See, also, *Kane & Co. v. Independent School-Dist. of Rock Rapids,* 82 Iowa 5, 47 N. W. 1076; *Smith v. Broderick,* 107 Cal. 644, 40 Pac. 1033, 48 Am. St. 167; *Board of Com'rs of Oxford v. Union Bank of Richmond,* 96 Fed. 293.

The same rule has been applied by the supreme court of the United States in favor of a stockholder of a private corporation who was sued under a Kansas statute by a creditor in order to collect a judgment rendered against a corporation. The stockholder was permitted to go behind the judgment and show a want of power in the corporation to make the contract on which the judgment rested. *Ward v. Joslin,* 186 U. S. 142.

This case has been one of much difficulty. We have given it most careful consideration. We are satisfied that the result reached by the trial court was the correct one.

The judgment is affirmed.

MORRIS, C. J., MAIN, and FULLERTON, JJ., concur.