# IN THE SUPREME COURT OF CALIFORNIA

CITY OF SAN JOSÉ,
Plaintiff and Respondent,

v.

HOWARD JARVIS TAXPAYERS ASSOCIATION et al.,
Defendants and Appellants.

S285426

Sixth Appellate District
H050889

Santa Clara County Superior Court
21CV391517

December 18, 2025

Justice Evans authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Kruger, Groban, and Jenkins[*] concurred.

---

[*]     Retired Associate Justice of the Supreme Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

CITY OF SAN JOSÉ v. HOWARD JARVIS TAXPAYERS
ASSOCIATION

S285426

Opinion of the Court by Evans, J.

The local debt limitation in the California Constitution prohibits cities and counties from incurring any indebtedness or liability that exceeds their income and revenue for that year, unless the indebtedness or liability has first been approved by two-thirds of the voters. (Cal. Const., art. XVI, § 18, subd. (a).)[1] The debt limitation, however, does not apply to indebtedness or liability a local government may incur to fulfill an obligation imposed by law. (See *Rider v. City of San Diego* (1998) 18 Cal.4th 1035, 1046 (*Rider*).)

In this case, the City of San José (City) seeks to finance the unfunded liability in its retirement plans by issuing pension obligation bonds. It instituted this action under Code of Civil Procedure section 860 et seq. to obtain a declaration that the proposed bonds were valid and did not violate, in particular, the local debt limitation. Defendants Howard Jarvis Taxpayers Association, Citizens for Fiscal Responsibility, and Pat Waite (collectively, HJTA) contend that the pension obligation bonds require voter approval because they will create a municipal debt in excess of the current year's income.

---

[1] Unspecified references to "article" are to the California Constitution.

The trial court entered judgment for the City, finding that the proposed bonds fall within the obligation-imposed-by-law exception to the local debt limitation. The Court of Appeal affirmed but framed its conclusion differently: it determined that the proposed bonds would not cause the City to incur any new indebtedness or liability because "the debt the [C]ity seeks to refund already exists." (*City of San José v. Howard Jarvis Taxpayers Assn.* (2024) 101 Cal.App.5th 777, 806 (*City of San José*).) We affirm. Even assuming the proposed bonds would incur new debt, the City has an obligation imposed by law to address the existing shortfall in its retirement plans. Although HJTA is correct that no law requires the City to address this shortfall by issuing bonds for the entire sum, the local debt limitation does not constrain how local governments choose to manage obligations that are imposed by law.

## I. BACKGROUND

In 1965, the City's voters enacted a charter that, among other things, required the city council to "provide, by ordinance or ordinances, for the creation, establishment and maintenance of a retirement plan or plans for all officers and employees of the City" and to fund these plans in an actuarially sound manner.[2] (San José City Charter, art. XV, § 1500 ["Duty to Provide Retirement System"]; see *id.*, §§ 1504, subd. (c), 1508-A, subd. (a).) By ordinance, both the City and its employees contribute to the normal costs of the employee retirement plans. (See, e.g.,

---

[2] The California Constitution provides that, "For its own government, a county or city may adopt a charter by majority vote of its electors voting on the question. . . . A charter may be amended, revised, or repealed in the same manner." (Cal. Const., art. IX, § 3, subd. (a).)

San José Mun. Code, tit. 3, pt. 2, ch. 3.28, § 3.28.200; *id*., ch. 3.36, pt. 10, § 3.36.1520.) The normal cost is the present value of the future retirement benefits earned during the year by current employees. The level of contributions is fixed by the board of administration (board or retirement board) for each retirement plan based on mortality, service, and other tables; actuarially assumed annual rate of return; and other actuarial assumptions as the board may deem reasonably necessary to provide the benefits under the retirement plans and to make the system "at all times actuarially sound." (San José Mun. Code, tit. 3, pt. 2, ch. 328, § 3.28.200, subd. A.; *id*., ch. 3.36, pt. 10, § 3.36.1520, subd. A.) The contributions are paid as a percentage of payroll, as determined by the retirement plan's actuary.

As in all human endeavors, though, assumptions can be superseded by actual events. Inflation may be higher or lower than forecast. The rate of return on the retirement plan's assets may exceed or fall short of the projection. Employee tenure may be longer or shorter than historical trends. And life expectancy, both for the employees and for their beneficiaries, may not move at a constant rate. When these or other factors result in a shortfall between the actuarial value of the retirement plan's assets and the present value of the future benefits already earned by current employees and retirees as of the valuation date, an unfunded actuarial liability (hereafter sometimes UAL) arises. The board calculates the unfunded actuarial liability each year. (*City of San José*, *supra*, 101 Cal.App.5th at p. 789.) If the City chooses to pay down the unfunded liability over time, the board creates an amortization schedule. The City makes a lump-sum annual payment towards the unfunded liability at

the beginning of the fiscal year, which offers a discount as compared to monthly UAL payments.

Despite the discount afforded by these annual prepayments, the City has expressed concern about the growing impact of its unfunded actuarial liability in future budget years. A presentation prepared by City staff in September 2021 cautioned that the projected increase in annual UAL payments through 2029 threatened to "erod[e] capacity for other City programs and services." If, on the other hand, the City were able to refinance the unfunded liability at a lower rate than the discount rate[3] being charged by the board for the amortization of the unfunded actuarial liability (which, at the time this litigation began, was 6.625 percent), the staff presentation forecast that the savings could be used to accelerate the amortization of the unfunded actuarial liability and ease the pressure on current and future budgets.

In October 2021, after much deliberation, the City decided to refinance its unfunded actuarial liability by issuing pension obligation bonds in an amount no greater than the lesser of (a) $3,483,001,000 (which represented the unfunded actuarial liability in the City's retirement plans as most recently calculated by the actuary) or (b) "the sum of the City's Unfunded Liability and Current Obligation as calculated by the actuary." The city council's resolution conditioned issuance of the bonds on "savings to the City in accordance with the City's then current Debt Management Policy" and a maturity date no later "than the last date through which the Retirement Boards

---

[3]     The discount rate is the current expected annual rate of return on investments, as determined by the retirement board.

determined for the amortization of the Unfunded Liability of the City, in accordance with current procedures."

The City instituted the instant litigation under Code of Civil Procedure section 860 et seq. seeking judicial validation of its authority to issue the pension obligation bonds. HJTA filed an answer, seeking a judgment that the city council's resolution was invalid. The answer contended that the City could issue bonds to refinance its unfunded actuarial liability only if the bonds were first approved by two-thirds of the City's voters. It relied on the local debt limitation in article XVI, section 18, subdivision (a), which requires a vote of the people before a city or other municipal entity may incur "any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year."

Following a stipulation to a bench trial on the papers, the Santa Clara County Superior Court entered judgment for the City. The court noted that the City "is required under the Charter to establish, fund and maintain actuarially sound Retirement Plans" and further found that "[i]n order to maintain Retirement Plans that are actuarially sound, the City is required to pay the Unfunded Liability." The court concluded that in light of those circumstances, the City's unfunded liability qualified as an obligation imposed by law, which is a recognized exception to the constitutional debt limit provision.

The Court of Appeal likewise found the local debt limitation did not apply, but relied on different reasoning. (*City of San José*, *supra*, 101 Cal.App.5th 777.) The court held that the City's actions "do not trigger the constitutional debt limitation" because "the debt the [C]ity seeks to refund already exists, in the form of the unfunded liability." (*Id.* at pp. 788,

806.) The court therefore found it unnecessary to consider the applicability of any exceptions to the debt limit provision. (*Id*. at p. 788.)

We granted HJTA's petition for review.

## II. DISCUSSION

The local debt limitation, which has been part of the California Constitution in some form since 1879, currently provides: "No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters of the public entity voting at an election to be held for that purpose . . . ." (Cal. Const., art. XVI, § 18, subd. (a).) The provision represents a directive for the local government "to live within its means." (*Gassman v. Governing Board* (1976) 18 Cal.3d 137, 148.) The framers intended, "[i]n other words, that each year's income and revenue must pay each year's indebtedness and liability, and that no indebtedness or liability incurred in any one year shall be paid out of the income or revenue of any future year." (*San Francisco Gas Co. v. Brickwedel* (1882) 62 Cal. 641, 642.) This "establish[ed] the 'pay as you go' principle as a cardinal rule of municipal finance." (*Westbrook v. Mihaly* (1970) 2 Cal.3d 765, 776, vacated on other grounds in *Mihaly v. Westbrook* (1971) 403 U.S. 915.)

"[A]lmost as old" as the local debt limitation itself, however, are "[c]ertain exceptions" to the debt limitation. (*Rider*, *supra*, 18 Cal.4th at p. 1046.) We have long understood, in particular, that "[a]n obligation imposed by law upon a city or county is not an indebtedness or liability within the meaning of the debt limitation provision." (*County of Los Angeles v. Byram*

6

(1951) 36 Cal.2d 694, 698 (*Byram*).) Rather, the local debt limitation is "clearly . . . confine[d] . . . to those forms of indebtedness and liability which may have been created by the voluntary action of the officials in charge of the affairs of such city." (*Long Beach v. Lisenby* (1919) 180 Cal. 52, 57 (*Lisenby*).)[4]

In *Lewis v. Widber* (1893) 99 Cal. 412, for example, we held that the City and County of San Francisco's chief clerk's salary for a prior fiscal year could be paid out of the revenues of the current fiscal year, notwithstanding the local debt limitation. (*Id*. at p. 415.) That provision, we reasoned, applied only to indebtedness or liability which the municipality "has discretion to incur or not to incur" (*id*. at p. 413); consequently, it could not apply to the chief clerk's salary, "whose office has been created and salary fixed by [state] law, either statutory or constitutional." (*Id*. at p. 415.) Similarly, in *Compton Community College etc. Teachers v. Compton Community College Dist.* (1985) 165 Cal.App.3d 82 (*Compton Community College*), the Court of Appeal concluded that community college

---

[4] In addition to the exception for obligations imposed by law, we have also recognized that "contingent obligations" do not implicate the state or local debt limitations because a "sum payable upon a contingency is not a debt, nor does it become a debt until the contingency happens." (*Doland v. Clark* (1904) 143 Cal. 176, 181 [citing *People v. Arguello* (1869) 37 Cal. 524, 525]; *American Co. v. City of Lakeport* (1934) 220 Cal. 548, 557 [applying both the "contingent obligation" and the "obligation imposed by law" exception to municipal bonds].) Because the parties do not appear to have relied on the contingent-obligation exception in this court or the courts below, we do not address it here. Our focus on the obligation-imposed-by-law exception is not meant to imply that other exceptions may not be relevant to future cases.

teachers whose salaries were unilaterally reduced during a contract year were entitled to be made whole in subsequent fiscal years, notwithstanding the local debt limitation. (*Id.* at p. 84.) State law required the college district to employ the qualified instructors "needed to provide education to its citizens"; "to set salary schedules after engaging in good faith bargaining about 'wages, hours of employment and other terms and conditions of employment' "; and "not to reduce teacher salaries during a contract year." (*Id.* at pp. 93, 92, 95.) The backpay owed to the teachers therefore was "not an obligation voluntarily assumed by local government; it is a duty imposed by law. As such, the repayments are not subject to the constitutional debt limitation." (*Id.* at p. 96; see *id.* at pp. 86–87 [backpay was "not a debt voluntarily incurred by the school district but one 'imposed by law' "].)

And in *Byram*, *supra*, 36 Cal.2d 694, we held that the costs associated with the construction of a court building in Los Angeles fell within the obligation-imposed-by-law exception to the local debt limitation. The county board of supervisors was required by state law " 'to provide "suitable quarters" for superior and municipal courts,' " leaving it to counties " 'to determine, in each case, what is required to constitute "suitable quarters." ' " (*Id.* at p. 699.)

The City argues that the exception for obligations imposed by law applies here because the City was obligated by law to fund its employee pension plans in an actuarially sound manner. It points to the City's charter, in which the voters required the City to create, establish, and maintain a retirement plan for all officers and employees. (San José City Charter, art. XV, § 1500; see Cal. Const., art. XI, § 3, subd. (a) ["The provisions of a charter are the law of the State and have the force and effect

of legislative enactments"].)  Under state law, "[a]ny pension or retirement system adopted shall be on a sound actuarial basis" (Gov. Code, § 45342), and contributions by the city and its employee members must be calculated so as to "accumulate at retirement a fund sufficient to carry out the promise to pay benefits . . . , without further contributions from any source" (*id.*, § 45343).  (See *Costa Mesa v. McKenzie* (1973) 30 Cal.App.3d 763, 773 ["a municipal retirement plan . . . must be on a sound actuarial basis"].)  In the City's view, it has a legal obligation to address the shortfall between the actuarial value of the retirement plan's current assets and the present value of the future benefits already earned by current employees and retirees.  That it may have options in how that shortfall should be addressed — e.g., continue to amortize it over the specified period by financing it at the retirement system's discount rate or, alternatively, issue a pension obligation bond or bonds set at an interest rate below the discount rate — does not alter the fact it has an obligation imposed by law to deal with the shortfall.

HJTA concedes that the City is required "to make up any deficiencies that have developed in the [retirement] funds (i.e., unfunded liabilities)."  It argues nonetheless that this mandate does not qualify as an obligation imposed by law within the meaning of the local debt limitation because the City's legal obligation to fund its retirement system was a product of "its voluntary choice to offer pensions."  For this proposition, HJTA relies heavily on *State ex rel. Pension Obligation Bond Com. v. All Persons Interested etc.* (2007) 152 Cal.App.4th 1386 (*Pension Obligation Bond*), which construed the debt limitation provision

applicable to the Legislature in article XVI, section 1.[5]   In *Pension Obligation Bond*, the State of California, through its Pension Obligation Bond Committee, brought a validation action seeking a declaration of the legality of the committee's resolution to issue bonds to fund a portion of the State's employer contributions to the Public Employees Retirement System (PERS).   (*Pension Obligation Bond*, *supra*, 152 Cal.App.4th at p. 1393.)  (The committee had been established by the Legislature for the purpose of issuing and selling these bonds.  (*Ibid*.))  The trial court ruled that the proposed bonds violated the state debt limit provision, and the Court of Appeal affirmed, reasoning that "the State's obligation to fund PERS is one the Legislature voluntarily imposed on itself."  (*Id*. at pp. 1407–1408.)

HJTA reads too much into *Pension Obligation Bond*.  The court in that case did not find it fatal that the Legislature had voluntarily created a pension system.  What the *Pension Obligation Bond* court found determinative was instead the fact that nothing in the California Constitution created an obligation to fund retirement benefits "in accordance with the [retirement]

---

[5]    That provision reads, in pertinent part: "The Legislature shall not, in any manner create any debt or debts, liability or liabilities, which shall, singly or in the aggregate with any previous debts or liabilities, exceed the sum of three hundred thousand dollars ($300,000) . . . unless the same shall be authorized by law for some single object or work to be distinctly specified therein . . . ; but no such law shall take effect unless it has been passed by a two-thirds vote of all the members elected to each house of the Legislature and until, at a general election or at a direct primary, it shall have been submitted to the people and shall have received a majority of all the votes cast for and against it at such election . . . ."  (Cal. Const., art. XVI, § 1.)

board's calculations." (*Pension Obligation Bond*, *supra*, 152 Cal.App.4th at p. 1405.) *That* obligation, the court explained, derived from a statute. (*Ibid.*, citing Gov. Code, § 20790 et seq.) And because the obligation to pay the amount set by the retirement board was a statutory obligation, the obligation on which the State relied was "essentially an obligation imposed by the Legislature on itself." (*Pension Obligation Bond*, at p. 1405.)

The same cannot be said about the significance of state law on the *City's* obligations, however. The City has no ability to avoid or amend its duty under state law (see Gov. Code, §§ 45342, 45343), echoed by its own voter-enacted charter (see San José City Charter, art. XV, §§ 1500, 1504, subd. (c), 1508-A, subd. (a)), to satisfy the financial obligations calculated by its retirement boards. (See *Pension Obligation Bond*, *supra*, 152 Cal.App.4th at p. 1399.) Because the City's obligation to fund its pension in an actuarially sound manner was imposed by state law, the council's efforts to grapple with that obligation do not qualify as voluntary for purposes of the local debt limitation.

HJTA's reliance on *Arthur v. City of Petaluma* (1917) 175 Cal. 216 is likewise misplaced. There, the City of Petaluma's trustees arranged for the printing in the daily newspaper of the charter they planned to propose to the voters, as required by state law, but lacked sufficient funds to pay the printer in the current fiscal year. (*Id.* at pp. 217–218, 225.) We held that any payment to the printer would be subject to the requirements set forth in the local debt limitation, in that the "indebtedness" was "the immediate result" of a contract voluntarily entered into by the municipality as a precondition to submitting a charter to the voters for their consideration. (*Id.* at p. 225.) The obligation here, by contrast, is not a voluntary one, but rather a mandate imposed by state law and the City's voter-enacted charter to

11

fund the City's pension in an actuarially sound manner. (See Gov. Code, §§ 45342, 45343; San José City Charter, art. XV, §§ 1500, 1504, subd. (c), 1508-A, subd. (a).)

HJTA argues that even if the City's duty to maintain an actuarially sound retirement system is involuntary, the pension obligation bonds fall outside the obligation-imposed-by-law exception because the City has no "specific" duty (*Byram*, *supra*, 36 Cal.2d at p. 699) to *prepay* its unfunded liability through issuance of a bond. In HJTA's view, the pension obligation bonds must be approved by the voters because the charter did not "specifically impose prepayment of any year's unfunded liability projection," nor did any statute specifically "require[] that cities raise all of that money immediately by issuing bonds." The City could, HJTA contends, instead amortize the unfunded portion over the relevant period (as it has been doing) and pay down that amortized portion of the UAL out of available revenues each year. While the City is of course free to continue on its current path, this misconceives the nature of the inquiry under the local debt limitation provision. The City's burden is to demonstrate that the unfunded actuarial liability is an obligation imposed by law — not that the particular method it has chosen to fulfill its obligation is mandated by law.

Consider *Byram*, *supra*, 36 Cal.2d 694, where we reviewed Los Angeles's expenditure of funds to construct a courthouse. We held that the county's legal duty to provide "adequate quarters" for its courts was sufficient to avoid the local debt limitation where the existing facilities were "not adequate, and the board of supervisors has determined that the proposed construction is necessary." (*Id.* at pp. 699, 700.) The fact that the county "had a great deal of discretion in deciding what kind of courthouse to supply and how much to invest in it" did not

undermine its status as an obligation imposed by law. (*Compton Community College*, *supra*, 165 Cal.App.3d at p. 91, citing *Byram*, at p. 700; see *Pension Obligation Bond*, *supra*, 152 Cal.App.4th at p. 1399.) "The nature and cost of these buildings were issues within the discretion of local government." (*Compton Community College*, at p. 91.)

Similarly, the college district in *Compton Community College*, which had wrongfully reduced teachers' salaries, sought to invoke the local debt limitation on the ground that it "had no specific duty to arrive at any particular salary schedule during collective bargaining negotiations." (*Compton Community College*, *supra*, 165 Cal.App.3d at p. 93.) Indeed, the district "had discretion to negotiate whatever compensation levels it wanted to with the individuals hired to discharge the mandated function." (*Id.* at p. 94.) The court found nonetheless that the teachers' claim for the portion of their salary that had been withheld in the prior fiscal year was not subject to the local debt limitation. The obligation imposed by law was the "duty to restore the illegal cuts." (*Id.* at p. 96.) There is no requirement that the law additionally "set the exact amount of that expenditure." (*Id.* at p. 93; see also *Wright v. Compton Unified Sch. Dist.* (1975) 46 Cal.App.3d 177, 183.)

Likewise, here, the City has a duty to maintain its retirement system and to fund it in an actuarially sound manner. The unfunded actuarial liability therefore represents an obligation imposed by law, one the City is currently addressing by making amortized payments using the current discount rate. Whether to refinance that obligation by issuing pension obligation bonds at what the City hopes will be a lower interest rate, in an effort to reduce its total payments, is a matter generally entrusted to its discretion. (See generally

*Crowley v. Board of Supervisors* (1948) 88 Cal.App.2d 988, 999–1000 (*Crowley*) ["ultimately the [actuarial] deficit must be borne by the county, and whether it chooses to do so now or at some future time is a matter within the discretion of the board of supervisors with which the court may not interfere, since in either event the purpose of the retirement law would be carried out"].)

HJTA objects that the proposed pension obligation bonds do not fall within the City's discretion in this instance because it is the retirement board, not the city council, which has the fiduciary responsibility under the state Constitution for the retirement system's assets and administration. It cites article XVI, section 17, subdivision (a), which vests the retirement board of a public pension or retirement system with "the sole and exclusive fiduciary responsibility over the assets of the public pension or retirement system" as well as the "sole and exclusive responsibility to administer the system in a manner that will assure prompt delivery of benefits and related services to the participants and their beneficiaries." HJTA contends that because the Constitution assigns these roles exclusively to the retirement board, "the City Council cannot decide that additional assets must be supplied in the current year, nor can it perform any 'actuarial services in order to assure the competency of the assets.'" (Quoting Cal. Const., art. XVI, § 17, subd. (e).)

We need not decide whether the city council has such powers because we find that the council did no more than rely on actuarial services and calculations performed by the retirement board. The City's proposal caps the bond's aggregate principal amount at $3,483,001,000, which reflects *the retirement board's* calculation of the unfunded liability in the

City's retirement plans as of June 30, 2020. (See City of San José, Off. of Retirement Services, Annual Comprehensive Financial Report 2020–2021 San José Police & Fire Dept. Retirement Plan (Nov. 2021) p. 145; City of San José, Off. of Retirement Services, Annual Comprehensive Financial Report 2020–2021 San José Federated City Employees' Retirement System (Nov. 2021) p. 140.) In other words, as amici curiae the League of California Cities et al. point out, the City did not calculate the unfunded liability, perform actuarial services, or independently decide the pension fund required additional assets: "Actuaries conducted the relevant evaluations; the retirement board managed the assets of the fund; and both informed the City that the fund was woefully underfunded." The City "then carried out its obligation to *maintain* . . . actuarially sound pension plans." HJTA cites nothing to indicate the local debt limitation provision constrains the City's discretion in managing this obligation — i.e., whether to amortize the unfunded actuarial liability over a period of years (as the City has been doing), pay it as a lump sum (as the City proposes to do in this validation action), attempt to pay it out of current revenues at the time pension benefits must be paid, or some combination of these. We conclude the choice among these options is not affected by the local debt limitation provision. (See *Crowley*, *supra*, 88 Cal.App.2d at pp. 999–1000.)

Finally, HJTA urges us to follow *County of Orange v. Association of Orange County Deputy Sheriffs* (2011) 192 Cal.App.4th 21 (*County of Orange*). But *County of Orange* involved a question distinct from the one before us. In *County of Orange*, the court was asked to decide whether the unfunded actuarial liability caused by an increase in pension benefits — not the local government's attempt to ameliorate it — violated

the local debt limitation. (*Id.* at p. 31.) The court held that the unfunded liability did not constitute "indebtedness or liability" within the meaning of article XVI, section 18, subdivision (a) because it was not an amount "for which the County is immediately liable." (*County of Orange*, at p. 38.) *County of Orange* did not consider whether the exception for obligations imposed by law was applicable. Indeed, it did not even mention the exception.

The Court of Appeal below distinguished *County of Orange* based on its "materially different" facts, noting that in the instant case, "the city does not seek to increase pension benefits but instead to issue bonds to provide an income stream for a liability it has already incurred." (*City of San José, supra,* 101 Cal.App.5th at p. 798.) Further, while *County of Orange* found persuasive that "[then-]existing accounting standards" did not require the unfunded liability be reported on the balance sheet as a liability (*County of Orange, supra,* 192 Cal.App.4th at p. 39), the Court of Appeal noted that those standards had undergone a significant change since *County of Orange* had been decided: "The current version of the [accounting] standards requires that the unfunded liability be reported as a current deficit on the city's balance sheet." (*City of San José, supra,* 101 Cal.App.5th at p. 798, fn. 11.) The court then concluded that "*County of Orange* does not control here." (*Id.* at p. 798.)

We need not decide whether the Court of Appeal below correctly distinguished *County of Orange.* We decide only that the City's unfunded liability represents an obligation imposed by law, and that the local debt limitation does not constrain the City's discretion in how to address that obligation.

### III. DISPOSITION

We hold that the proposed pension obligation bonds, even if deemed to create a new debt, fall within the exception to the local debt limitation for obligations imposed by law. The judgment of the Court of Appeal is affirmed.

**EVANS, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**[*]

---

[*] Retired Associate Justice of the Supreme Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  City of San José v. Howard Jarvis Taxpayers Association

—————————————————————————————————————

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 101 Cal.App.5th 777
**Review Granted (unpublished)**
**Rehearing Granted**

—————————————————————————————————————

**Opinion No.** S285426
**Date Filed:**  December 18, 2025

—————————————————————————————————————

**Court:**  Superior
**County:**  Santa Clara
**Judge:**  Sunil R. Kulkarni

—————————————————————————————————————

**Counsel:**

Jonathan M. Coupal, Timothy A. Bittle, Laura E. Dougherty and Amy C. Sparrow for Defendants and Appellants.

Stradling Yocca Carlson & Rauth, Allison E. Burns, Brian P. Forbath and Gregory J. Maestri for Plaintiff and Respondent.

Orrick, Herrington & Sutcliffe, Devin Brennan, Emily Minton Mattson and Kristopher R. Wood for the League of California Cities and the California State Association of Counties as Amici Curiae on behalf of Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Amy C. Sparrow
Howard Jarvis Taxpayers Foundation
1201 K Street, Suite 1030
Sacramento, CA 95814
(916) 444-9950

Allison E. Burns
Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
(949) 725-4187